

# South Carolina
# Department of Insurance

**Capitol Center**
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**

**HENRY McMASTER**
Governor

**RAYMOND G. FARMER**
Director

**Mailing Address:**
**P.O. Box 100105, Columbia, S.C. 29202-3105**
**Telephone: (803) 737-6160**

March 6, 2018

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
HORACE MANN INSURANCE COMPANY
c/o CORPORATION SERVICE COMPANY
1703 Laurel Street
COLUMBIA, SC 29201-0000

Dear Sir:

On March 6, 2018, I accepted service of the attached Summons, Complaint, Interrogatories and Request for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. The claimant, within this service letter, provided the following additional information regarding this first party claim: POLICY/CLAIM NUMBER 39-77648490. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to sdubois@doi.sc.gov.** When replying, please refer to File Number 169576, <u>Annie Skinner v. HORACE MANN INSURANCE COMPANY</u>, 2018-CP-21-181.

By:

*[signature: D. E. Belton]*

David E. Belton
Senior Associate General Counsel
(803)737-6132

Sincerely Yours,

Raymond G. Farmer
Director
State of South Carolina
Department of Insurance

Attachment

CC:    Benjamin W; Lee
       32 Ann Street
       Charleston, SC   29403

| STATE OF SOUTH CAROLINA | ) | |
|---|---|---|
| | ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF FLORENCE | ) | |

**FILED**

| ANNIE SKINNER, as Assignee of ANDREW POSTON, | ) | CIVIL ACTION COVERSHEET |
|---|---|---|
| | ) | |
| **Plaintiff,** | ) | **2018 FEB -1 PM 4 16** |
| | ) | |
| vs. | ) | **DORIS POULOS O'HARA** |
| | ) | **CCCP & GS** **2018-CP-21-181** |
| | ) | **FLORENCE COUNTY, SC** |
| HORACE MANN INSURANCE COMPANY, | ) | |
| **Defendant.** | ) | |

| (Please Print) | | |
|---|---|---|
| Submitted By: Benjamin W. Lee; Roy T. Willey, IV; Eric M. Poulin | SC Bar #: | 103213; 101010; 100209 |
| | Telephone #: | (843)614-8888 |
| Address: 32 Ann Street, Charleston, SC 29403 | Fax #: | (843)853-2291 |
| | Other: | |
| | E-mail: | ben@akimlawfirm.com |
| | | roy@akimlawfirm.com |
| | | eric@akimlawfirm.com |

**NOTE:** The cover sheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this cover sheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION  (*Check all that apply*)

*\*If Action is Judgment/Settlement do not complete*

☒ **JURY TRIAL** demanded in complaint.    ☐ **NON-JURY TRIAL** demanded in complaint.
☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☒ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

**CERTIFIED A TRUE COPY** (stamp)

## NATURE OF ACTION (*Check One Box Below*)

| **Contracts** | **Torts - Professional Malpractice** | **Torts – Personal Injury** | **Real Property** |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Assault/Slander/Libel (300) | ☐ Claim & Delivery (100) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Conversion (310) | ☐ Condemnation (910) |
| ☐ Employment (120) | ☐ Medical Malpractice (220) | ☐ Motor Vehicle Accident (320) | ☐ Foreclosure (420) |
| ☐ General (130) | Previous Notice of Intent Case # | ☐ Premises Liability (330) | ☐ Mechanic's Lien (430) |
| ☐ Breach of Contract (140) | 20____-CP-____-____ | ☐ Products Liability (340) | ☐ Partition (440) |
| ☐ Other (199) | ☐ Notice/ File Med Mal (230) | ☐ Personal Injury (350) | ☐ Possession (450) |
| | ☐ Other (299) | ☐ Wrongful Death (360) | ☐ Building Code Violation (460) |
| | | ☒ Other (399) Bad Faith | ☐ Other (499) |

| **Inmate Petitions** | **Judgments/Settlements** | **Administrative Law/Relief** | **Appeals** |
|---|---|---|---|
| ☐ PCR (500) | ☐ Death Settlement (700) | ☐ Reinstate Driver's License (800) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Foreign Judgment (710) | ☐ Judicial Review (810) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Magistrate's Judgment (720) | ☐ Relief (820) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Minor Settlement (730) | ☐ Permanent Injunction (830) | ☐ Municipal (930) |
| | ☐ Transcript Judgment (740) | ☐ Forfeiture-Petition (840) | ☐ Probate Court (940) |
| | ☐ Lis Pendens (750) | ☐ Forfeiture—Consent Order (850) | ☐ SCDOT (950) |
| | ☐ Transfer of Structured Settlement Payment Rights Application (760) | ☐ Other (899) | ☐ Worker's Comp (960) |
| | | | ☐ Zoning Board (970) |
| | ☐ Other (799) | | ☐ Public Service Commission (990) |
| | | | ☐ Employment Security Comm (991) |

| **Special/Complex /Other** | |
|---|---|
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) |
| ☐ Medical (620) | ☐ Out-of-State Depositions (650) |
| ☐ Other (699) | ☐ Motion to Quash Subpoena in an Out-of-County Action (660) |
| | ☐ Sexual Predator (510) |

☐ Other (999)

**Submitting Party Signature:** *[signature]*    **Date:    January 26, 2018**

**Note:** Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

**Effective January 1, 2016,** Alternative Dispute Resolution (ADR) is mandatory in all counties, pursuant to Supreme Court Order dated November 12, 2015.

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**Pursuant to the ADR Rules, you are required to take the following action(s):**

1.  The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2.  The initial ADR conference must be held within 300 days after the filing of the action.

3.  Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs.

4.  Cases are exempt from ADR only upon the following grounds:

    a.  Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;
    b.  Requests for temporary relief;
    c.  Appeals;
    d.  Post-Conviction relief matters;
    e.  Contempt of Court proceedings;
    f.  Forfeiture proceedings brought by governmental entities;
    g.  Mortgage foreclosures; and
    h.  Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute;

5.  In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6.  Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:   You must comply with the Supreme Court Rules regarding ADR.**
**Failure to do so may affect your case or may result in sanctions.**

IN THE STATE OF SOUTH CAROLINA )
COUNTY OF FLORENCE )

ANNIE SKINNER, as Assignee of
ANDREW POSTON,

                          Plaintiff,

        v.

HORACE MANN INSURANCE
COMPANY,

                          Defendant.

IN THE COURT OF COMMON PLEAS
FOR THE 12TH JUDICIAL CIRCUIT
CASE NO: 2017-CP-21-181

**AMENDED SUMMONS**
**(Jury Trial Demanded)**

**TO:   DEFENDANT ABOVE-NAMED**

   YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action,

a copy of which is herewith served upon you, and to serve a copy of your Answer to said Complaint

upon Plaintiff or her attorneys, Benjamin W. Lee, Roy T. Willey, IV, and Eric M. Poulin, at their

office located at 32 Ann Street, Charleston, South Carolina, 29403, within thirty (30) days after

the service hereof, exclusive of the day of such service. If you fail to answer the Complaint within

the time aforesaid, you may be found in default, and Plaintiff will apply to the Court for the relief

demanded in the Complaint.

   Dated at Charleston, South Carolina on this 26th day of January 2018.

                          ANASTOPOULO LAW FIRM, LLC

                          Benjamin W. Lee, Esquire
                          S.C. Bar No.: 103213
                          Eric M. Poulin, Esquire
                          S.C. Bar No.: 100209
                          Roy T. Willey, IV, Esquire
                          32 Ann Street
                          Charleston, S.C. 29403
                          (843) 614-8888

**ATTORNEYS FOR PLAINTIFF**

IN THE STATE OF SOUTH CAROLINA   )
COUNTY OF FLORENCE               )

ANNIE SKINNER, as Assignee of
ANDREW POSTON,

                        Plaintiff,

          v.

HORACE MANN INSURANCE
COMPANY,

                        Defendant.

IN THE COURT OF COMMON PLEAS
FOR THE 12TH JUDICIAL CIRCUIT
CASE NO: 2018-CP-21-181


**AMENDED COMPLAINT**
**(Jury Trial Demanded)**


**TO:  DEFENDANT ABOVE-NAMED**

Plaintiff Annie Skinner, as assignee of Andrew Poston, complaining of the acts and/or

omissions of Defendant Horace Mann Insurance Company, would respectfully show unto this

Honorable Court the following:

### PARTIES

1.    That Annie Skinner is a citizen and resident of the Georgetown County, South

Carolina.

2.    That Annie Skinner is referred to hereinafter as "Assignee" or "Plaintiff."

3.    That Andrew Poston is a citizen and resident of Florence County, South Carolina

of Florence.

4.    That Andrew Poston is referred to hereinafter as "Assignor."

5.    That, upon information and belief, Defendant Horace Mann Insurance company

(hereinafter Defendant "HMIC") is a for-profit corporation organized and existing under the laws

of the State of Illinois, with its principal place of business located at 1 Horace Mann Plaza,

Springfield, Illinois.

CERTIFIED A TRUE COPY

CLERK OF COURT C.P. & G.S,
FLORENCE COUNTY, S.C.

6.    That, upon information and belief, Defendant HMIC carries on, contracts for, and does substantial business deriving in large revenue therefrom in South Carolina, including Florence County.

7.    That this Court has jurisdiction over the parties and subject matter of this action.

8.    That venue is proper in Florence County, as the most substantial events giving rise to this cause of action occurred in Florence County, South Carolina.

9.    That Defendant HMIC may be served with process via its statutory agent, the South Carolina Department of Insurance, pursuant to the provisions of S.C. Code Ann. § 38-5-70, at 1201 Main Street, Suite 1000, Columbia, South Carolina 29201.

## FACTUAL ALLEGATIONS

10.    That Defendant HMIC issued an automobile liability policy of insurance ("the Policy"), identified as policy number SCU 39-77648490, to Assignor with a bodily injury liability coverage limit of $50,000 per person/$100,000 per incident, and a property damage coverage limit of $25,000 per incident.

11.    That the Policy was in effect and active on February 10, 2014, on which date Assignee severely injured and suffered extensive property damage when she was struck by a vehicle driven by Assignor, the proximate cause of such personal injuries and property damage being the acts and/or omissions of Assignor.

12.    That, at the time of February 10, 2014, incident, Assignee was named Annie Cokely.

13.    That on April 5, 2015, Assignee filed a lawsuit against Assignor in the Court of Common Pleas, County of Williamsburg, case number 2014-CP-45-00170 entitled <u>Annie Cokely v. Andrew Poston</u>.

2

14.    That on February 12, 2015, Assignee made a reasonable offer of compromise to Defendant HMIC to settle all claims against Assignor for the full amount of Assignor's liability insurance policy limits under the Policy. (*See* Ex. A - Feb. 10, 2014, Offer Ltr. to Defendant HMIC.)

15.    That acceptance of Assignee's reasonable offer to compromise required that Defendant HMIC tender Assignor's limits under the Policy on or before February 27, 2015.

16.    That, on February 20, 2015, Defendant HMIC tendered a "Settlement Agreement and Covenant Not to Enforce Judgment. (*See* Ex. B - Feb. 20, 2015, Defendant HMIC Tender Ltr.)

17.    That, on March 5, 2015, Plaintiff's counsel returned Defendant HMIC noncompliant tender, stating therein now Defendant HMIC failed to comply with the terms of Assignee's offer to compromise, returning the non-conforming tender, and advising that Assignee would proceed with filing a lawsuit regarding the subject collision. (*See* Ex. C - Mar. 5, 2015, Ltr. to Defendant HMIC.)

18.    That, on March 13, 2015, counsel for Defendant HMIC sent a letter to Assignee's counsel, the purpose for which was "to re-offer the Fifty Thousand Dollars ($50,000.00) of bodily injury coverage on a Covenant Not to Enforce Judgment basis," and to ask for clarification regarding Assignee's rejection of Defendant HMIC's February 20, 2015, tender. (*See* Ex. D - Mar. 13, 2015, Ltr. from Defendant HMIC.)

19.    That, on September 28, 2015, counsel for Defendant HMIC sent a letter to Assignee's counsel, therein requesting documentation which Defendant HMIC believed was needed to "support additional property damage that has not been resolved." (*See* Ex. E - Sep. 28, 2015, Ltr. from Defendant HMIC.)

3

20. That, on October 19, 2015, counsel for Defendant HMIC sent a letter to Assignee's counsel indicating that Defendant HMIC had "Thirty Five Thousand Six Hundred Forty Six Dollars and 85/100 ($35,646.85) remaining of its property damage liability limit. (*See* Ex. F - Oct. 19, 2015, Ltr. from Defendant HMIC.)

21. That, on October 20, 2015, counsel for Assignee notified Defendant HMIC that Defendant HMIC had not, in fact, tendered its bodily injury and property damage limits to Assignee, and again offered to mediate and/or discuss settlement in the range of the actual value of Assignee's case. (*See* Ex. G - Oct. 20, 2015, Ltr. to Defendant HMIC.)

22. That, by the time Defendant HMIC received Assignee's reasonable offer to compromise, Defendant HMIC knew that its insured, Assignor, was liable for causing severe personal injuries and property damage to Assignee.

23. That, by the time Defendant HMIC received Assignee's reasonable offer to compromise, Defendant HMIC knew that Assignee had incurred medical bills to date totaling approximately $600,000.

24. That, by the time Defendant HMIC received Assignee's reasonable offer to compromise, Defendant HMIC knew that Assignee would need ongoing and permanent therapy for the remainder of her lifetime as proximate result of the injuries she suffered in the February 10, 2014, motor vehicle incident.

25. That, by the time Defendant HMIC received Assignee's reasonable offer to compromise, Defendant HMIC knew that Assignee would be required to expend significant medical costs associated with future medical care and treatment, including physical therapy.

26. That, by the time Defendant HMIC received Assignee's reasonable offer to compromise, Defendant HMIC knew that Assignee was forty-five (45) years old at that time.

4

27.    That, by the time Defendant HMIC received Assignee's reasonable offer to compromise, Defendant HMIC knew that the future costs associated with Assignee's indefinite medical treatment alone well exceeded the limits of the Policy ($50,000).

28.    That Assignee's reasonable offer to compromise confirmed that, if Defendant HMIC rejected the offer and the case was taken to trial, any award above the available limits of the Policy would be sought from Assignor.

29.    That Defendant HMIC failed to meet the terms of Assignee's reasonable offer to compromise by the express deadline of February 27, 2015.

30.    That Defendant HMIC rejected Assignee's offer to compromise without consulting with its insured, Assignor, and did not inform Assignor that it had rejected Assignee's offer to compromise.

31.    That Defendant HMIC did not discuss the offer with Assignor or Assignor's personal attorney before rejecting Assignee's reasonable offer to compromise before rejecting the offer.

32.    That Defendant HMIC was given multiple opportunities to tender its bodily injury and property damage limits to Assignee, but failed to do so.

33.    That Defendant HMIC did not retain independent counsel to advise Assignor of his rights with respect to Assignee's reasonable offer to compromise.

34.    That Assignee's reasonable offer to compromise for the insurance policy limits under the Policy was rejected by Defendant HMIC, and that Assignee thereafter proceeded to trial against Assignor in the matter of Annie Cokely v. Andrew Poston.

35.    That, after the trial by jury in the matter of Annie Cokely v. Andrew Poston, a verdict was reached in favor of Assignee and against Assignor in the amount of $5,000,000.

36.    That, on or about June 2, 2016, Defendant HMIC paid to Assignee $50,090 in partial satisfaction of the judgment rendered in the matter of Annie Cokely v. Andrew Poston.

37.    That Assignee maintains a judgment against Assignor in the amount of $4,949,910 plus interest (the "Judgment").

38.    That Defendant HMIC's rejection of Assignee's reasonable offer to compromise for the available limits under the Policy and the resulting Judgment against Assignor provides Assignor a cause of action against Defendant HMIC for its breach of contract and breach of the implied covenant of good faith and fair dealing by failing to accept Assignee's reasonable offer to compromise, in not paying to Assignee the available amounts under the Policy when given a reasonable opportunity to do so, and in failing to inform Assignor of Assignee's reasonable offer to compromise in light of (i) the nature and scope of the injuries and damages suffered by Assignee; (ii) the probable liability of Assignor; (iii) the substantial risk of a recovery in excess of Assignee's reasonable offer to compromise; and (iv) the danger, however slight, of a judgment in excess of the limits of the Policy.

39.    That on June 12, 2017, Assignor, for good and valuable consideration, did irrevocably assign to Assignee all of his rights, remedies, title, and/or interest in, and to any claims against, Defendant HMIC for breach of contract, breach of the covenant of good faith and fair dealing, attorney's fees, fraud, emotional distress, punitive damages, and declaratory relief arising from Defendant HMIC's failure to accept Assignee's reasonable offer to compromise for the limits of the Policy.

40.    That Assignee, therefore, has standing to assert all legally assignable claims, as alleged herein, against Defendant HMIC.

## FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT HMIC
### (Breach of Contract)

41.     Assignee restates and re-alleges each and every allegation set forth above as if fully stated herein verbatim.

42.     That Assignor and Defendant HMIC had a mutually binding contract of insurance.

43.     That Defendant HMIC breached its contract of insurance with Assignor by its failure, refusal, and neglect to consult with Assignor as to Defendant HMIC's rejection of Assignee's reasonable offer to compromise, did not discuss said offer with Assignor or his personal attorney before rejecting said offer, and did not retain independent counsel to advise Assignor of his rights with respect to Assignee's reasonable offer to compromise.

44.     That Defendant HMIC breached its contract of insurance with Assignor by its failure, refusal, and neglect to settle Assignee's claim, up to the full amount of the stated coverage in the Policy, as offered by Assignee's February 12, 2105, reasonable offer to compromise.

45.     That, as a proximate result of Defendant HMIC's breach of contract, Assignor has been injured and otherwise damaged as set forth more fully herein.

46.     That, by nature of Assignor's assignment, Assignee is therefore entitled to recover from Defendant HMIC all damages incurred by Assignor as a result of Defendant HMIC's breach, including all actual damages, both pre-judgment and post-judgment interest, attorney's fees and costs, and for such other and further relief, in law or in equity, in favor of Assignee as this Court may deem just and proper.

## FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT HMIC
### (Negligence/Gross Negligence)

47.     Assignee restates and re-alleges each and every allegation set forth above as if fully stated herein verbatim.

7

48.    That Defendant HMIC had notice of Assignee's claim as early as April 6, 2015, when Assignee filed his Complaint in the matter of <u>Annie Cokely v. Andrew Poston</u>.

49.    That Defendant HMIC was negligent, grossly negligent, careless, reckless and wanton in the following particulars, among others:

      a.  In failing to process and adjust Assignee's claim against Assignor in a timely manner upon receipt of the same;

      b.  In failing to establish reasonable procedures for the processing and handling of claims that are made against its insureds;

      c.  In deviating from the standard of care that a reasonable and prudent insurance company would employ under the circumstances;

      d.  In any other such acts that constitute a violation of the laws or common laws of the State of South Carolina or the United States of America; and

      e.  In any other such manner as Assignee may discover through discovery.

50.    That Defendant HMIC's negligence was a proximate cause of Assignor's damages, as set forth more fully herein.

51.    That Assignor's damage would not have occurred but for Defendant HMIC's breach of the covenant of good faith and fair dealing.

52.    That Assignor's damage occurred as a natural and probable consequence of Defendant HMIC's negligence.

53.    That, by nature of her receipt of assignment, Assignee is, therefore, entitled to judgment against Defendant HMIC for actual, compensatory damages, including $4,494,910 plus interest accruing from November 1, 2016, and exemplary or punitive damages in an amount that is fair, just, and reasonable under the circumstances, plus to Assignee whatever costs, interest, both

pre-judgment and post-judgment, and attorney's fees that she may be entitled to be determined by a jury.

### FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT HMIC
#### (Bad Faith)

54.    Assignee restates and re-alleges each and every allegation set forth above as if fully stated herein verbatim.

55.    That, upon information and belief, pursuant to company policies, Defendant HMIC presents claims made against its insureds to a company adjuster to oversee the file and to work toward adjusting and attempting to settle those claims.

56.    That, upon information and belief, once a claim is presented to a company adjuster, the company adjuster maintains control over the claim and is involved in all claim handling decisions.

57.    That the underlying claim of Assignee was assigned to a company adjuster of Defendant HMIC, and at all relevant times Defendant HMIC assumed and maintained control of Assignee's underlying claim.

58.    That Defendant HMIC has a duty to deal in good faith and fair dealing with its insureds, namely the Assignor.

59.    That Assignor promptly reported the underlying claim/loss to Defendant HMIC, and has otherwise performed all conditions as required by the Policy.

60.    That Assignor did not make any demand or request to Defendant HMIC, or any of its agents or insurance brokers, that Defendant HMIC not settle Assignee's claim.

61.    That Assignor did nothing to impair Defendant's assessment of the risk of a substantial likelihood of an excess judgment.

62.    That Defendant HMIC failed to promptly and effectively investigate Assignee's claim.

63.    That Defendant HMIC failed to timely settle Assignee's claim within the limits of Assignor's policy limits, even though Defendant HMIC had the opportunity to do so.

64.    That Defendant HMIC rejected Assignee's offer of compromise without consulting Assignor; did not conduct an adequate or appropriate investigation; did not retain independent counsel to advise Assignor of his rights with respect to Assignee's reasonable offer to compromise; did not retain coverage counsel to properly review Assignee's reasonable offer to compromise and the applicable coverages; and otherwise failed to act as a reasonable and prudent insurance company would act under similar circumstances.

65.    That Defendant HMIC's failure to timely evaluate and settle Assignee's claim caused Assignee's policy limit offer to compromise to be withdrawn, exposing Assignor to personal financial risk.

66.    That Defendant HMIC has refused, and continues to refuse, to protect Assignor from personal exposure in this matter.

67.    That Defendant HMIC has breached the implied covenants of good faith and fair dealing under the Policy by, among other actions or inactions, failing to settle Assignee's claim within Assignor's insurance policy limits when presented with the reasonable opportunity to do so.

68.    That Defendant HMIC has acted in bad faith and/or was negligent, grossly negligent, careless, reckless, and wanton in the following particulars, among others:

      a.    In refusing to take any steps whatsoever to timely investigate Assignee's liability claim;

b.  In unreasonably failing to make any reasonable offer whatsoever on Assignee's liability claim during the time in which Assignee was willing to accept Assignor's policy limits in full and final settlement of the claim;

c.  In failing to timely inform Assignor that Assignee had offered to settle within the limits of Assignor's Policy;

d.  In failing to retain independent counsel to protect Assignor's interests;

e.  In failing to retain independent counsel to advise Assignor;

f.  In failing to communicate any reasonable justification for failing to indemnify Assignor in accordance with the terms of Assignee's policy limit offer;

g.  In failing to attempt in good faith to affect a fair, prompt, and equitable resolution to the claim;

h.  In failing to act responsibly in light of the totality of the circumstances presented by Assignee's claim;

i.  In failing to act as a reasonable and prudent insurance carrier/adjuster would act in regards to Assignee's claim.

j.  In violating S.C. Code § 38-59-20;

k.  In failing to acknowledge with reasonable promptness pertinent communications with respect to Assignee's claim arising under its policies;

l.  In failing to adopt and implement reasonable standards for the prompt investigation and settlement of Assignee's claim;

m.  In not attempting in good faith to effect prompt, fair, and equitable settlement of Assignee's claim;

n.  In exposing Assignor to excess personal liability;

o.  In unreasonably delaying settlement of Assignee's claim;

p.  In any other such acts that constitute a violation of the laws or common laws of the State of South Carolina or the United States of America; and

q.  In any other such manner as Assignee may discover through discovery.

69.     That Defendant HMIC's breach of good faith and fair dealing was the direct and proximate cause of Assignor's damage, including mental anguish, anxiety, stress, incurring expenses, a personal judgment in the amount of $4,449,910 plus interest, attorney fees, and punitive damages.

70.     That as a direct and proximate result of Defendant HMIC's breach of good faith and fair dealing, Assignor has been and continue to be injured in the following ways, among others:

a.  In suffering the personal exposure of an unsatisfied $4,449,910 judgment that is currently accruing interest;

b.  In incurring attorney's fees and expenses;

c.  In suffering the mental anguish, anxiety, and stress of being sued by Assignee and the knowledge that such suit would likely lead to excessive personal financial responsibility; and

d.  In other such ways as would cause Assignee's additional and unnecessary pain, suffering, and aggravation.

71.     That Assignor's damage would not have occurred but for Defendant HMIC's breach of good faith and fair dealing.

72.     That Assignor's damage occurred as a natural and probable consequence of Defendant HMIC's breach of good faith and fair dealing.

73.     That, by nature of her receipt of assignment, Assignee is therefore entitled to judgment against Defendant HMIC for actual, compensatory damages, including $4,449,910 plus interest accruing from November 1, 2016, and exemplary or punitive damages in an amount that is fair, just, and reasonable under the circumstances, plus to Assignee whatever costs, both pre-judgment and post-judgment interest, and attorney's fees that she may be entitled to be determined by a jury.

74.     That, additionally, Defendant HMIC is liable to Assignee for attorneys' fees in prosecuting this action pursuant to S.C. Code Ann. § 38-59-40.

## FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT HMIC
### (Negligence *Per Se*)

75.     Assignee restates and re-alleges every allegation set forth above as if fully stated herein verbatim.

76.     That, in addition to the acts and omissions of negligence and bad faith as set forth more fully above, Defendant HMIC was negligent per se for violating S.C. Code Ann. § 38-47-10.

77.     That pursuant to S.C. Code Ann. § 38-47-10(a), "[a]n individual commonly called an adjuster, adjusting loses for an insurer licensed to do business in this State, must be licensed by the director [of insurance] or his designee."

78.     That Defendant HMIC violated this statute.

79.     That the adjuster(s) assigned to the claim in question by Defendant HMIC was not licensed in South Carolina during the pendency of the claim.

80.     That the adjuster(s) assigned to the claim in question was not subject to any of the exceptions to licensure as set forth in S.C. Code Ann. § 38-47-10(B).

81.    That the licensure requirement was enacted to protect South Carolina residents from unskilled adjusters and adjusters lacking knowledge of local custom, practice, or law.

82.    That the statute was designed to protect insureds by ensuring that adjusters assigned to handle their claims were capable of protecting their interests.

83.    That the statute was further designed to protect claimants by ensuring a fair and regulated adjustment process.

84.    That Defendant HMIC's breach of this statute caused the exact harm that the legislature sought to prevent.

85.    That Defendant HMIC's unlicensed and unskilled adjusters failed to recognize the gravity of the claim, failed to properly respond to a time limited policy limit demand, and otherwise were negligent in adjusting the claim, as set forth more fully herein, ultimately exposing Assignor to a substantial personal judgment.

86.    That Assignor and Assignee were the exact class of citizens whom the legislature intended to protect when enacting the statute.

87.    That, accordingly, Defendant HMIC's breach of the statute constitutes negligence *per se*, entitling Assignee to actual and punitive damages for the injuries set forth more fully above.

WHEREFORE, Assignee prays for judgment against Defendant HMIC for an amount to be ascertained by the jury at the trial of this action, for all damages, punitive and actual, for the cost and disbursements of this action, both pre-judgment and post-judgment interest, attorneys' fees, and for such other and further relief, in law or in equity, as this Court may deem just and proper.

[Signature Page to Follow]

14

ANASTOPOULO LAW FIRM, LLC

Benjamin W. Lee, Esquire
S.C. Bar No.: 103213
Eric M. Poulin, Esquire
S.C. Bar No.: 100209
Roy T. Willey, IV, Esquire
S.C. Bar No.: 101010
32 Ann Street
Charleston, S.C. 29403
(843) 614-8888

**ATTORNEYS FOR PLAINTIFF**

Charleston, South Carolina
Date: January 26, 2018

Akim A. Anastopoulo (SC)
Renee M. Anderson (SC)
John I. Henderson (SC)
Marianthe L. Kolokithas (SC)
Eric M. Poulin (GA)(NC)(SC)
Casey Van Valkenburgh (SC)(IL)
Philip Heath Ward (SC)
Roy T. Willey, IV (SC)
*Affiliate Counsel

# ANASTOPOULO
# LAW FIRM

Toll Free: 1 (800) 313-2546
Facsimile: (843) 853-2291

Reply to North Charleston Office
www.AkimLawFirm.com

Thursday, February 12, 2015

<u>**PRIVILEGED AND CONFIDENTIAL:**</u>
<u>**RELATING TO SETTLEMENT DISCUSSIONS**</u>

Ryan Carver
Horace Mann Insurance
PO Box 962
Morrisville, NC  27560

RE:          My Client(s):      Annie  Cokely
             DOL:               February 10, 2014
             Claim #:           39454Z
             Pages:             10, Not Including Enclosures

Dear  Mr. Carver:

## <u>INADMISSIBILITY OF OFFER OF COMPROMISE</u>

Pursuant to South Carolina Rule of Evidence, Rule 408, statements made in compromise negotiations are not admissible at trial.  This rule is identical to the Federal Rule and designed to encourage the settlement of controversies by permitting parties to discuss their cases candidly with the assurance that admissions and proposals for compromise made in the course of their good-faith settlement negotiations may not be used against them to later prove liability.  <u>Hunter v. Hyder</u>, 236 S.C. 378, 114 S.E.2d 493 (1960).  However, evidence of an offer to compromise may be admissible for some other purpose.  <u>Meehan v. Commercial Casualty Ins. Co.</u>, 166 S.C. 496, 165 S.E. 194 (1932).  This entire letter and all of the exhibits attached are submitted with a view toward compromise of this claim.  If you do not agree that everything that follows is inadmissible during the litigation of this matter, please stop reading and immediately destroy this letter and its attachments and immediately notify us of your refusal to review our attempt to compromise this claim.

## <u>OFFER OF COMPROMISE</u>

This notice, demand, and offer of compromise is directed to you as the insurer of Andrew Poston.  This letter is written to submit an offer of compromise regarding Annie  Cokely's claims against your insured(s) in the above-referenced matter.  Additionally, this letter places you on

1



EXHIBIT

A

notice, consistent with the dictates of Tyger River Pine Co. v. Maryland Casualty Co., 170 S.C. 286, 170 S.E. 346 (1933) of a time-limited demand for the payment of policy limits of Andrew Poston's insurance coverage.

## I.   LIABILITY OF ANDREW POSTON

On the afternoon of February 10, 2014, at or about 3:20 PM, Ms. Annie Cokely picked her daughter up from school. They were going to the library. Mr. Andrew Poston was driving West on SC 4/Choppee Road, between the intersection of Shelly Drive and Strickland Drive, near Hemingway, SC. Ms. Cokely and her daughter were parked outside the library. Ms. Cokely got out of her vehicle. Meanwhile, Mr. Poston admitted to the Officer W.S. Owens of South Carolina Highway Patrol that he was distracted with a cup on the floorboard of his Chevrolet pickup truck. (See Exhibit A, Police Report) Mr. Poston's distracted driving endangered everyone on the roadway and those pedestrians nearby, like Ms. Cokely.

Ms. Ladejia Priest was driving in front of Mr. Poston in a 1994 Honda, making a right turn into the parking lot. Being distracted, Mr. Poston did not see Ms. Priest and did not see her slowing to turn. Mr. Poston's truck then slammed into the rear of Ms. Priest's vehicle, sending it careening into the library parking lot, and toward Ms. Cokely, her daughter, and the cars in the parking lot.

Ms. Cokely distinctly remembers hearing the sounds of the initial collision of Mr. Poston's vehicle with Ms. Priest's vehicle, and seeing Ms. Priest's vehicle barreling towards her. The impact had propelled Ms. Priest's vehicle, out-of-control towards Ms. Cokely. Ms. Cokely had no time to react. Ms. Cokely only remembers the severe and traumatic force of the impact. Her head and back were smashed, and she passed out due to the incredible pain and sheer force of the hit. Ms. Cokely regained conscious as she was loaded into a helicopter, and transported to the hospital by EMS

Ms. Cokely suffered severe injuries because Mr. Poston failed to maintain a safe and lawful speed, drove while distracted behind the wheel, and Mr. Poston failed to keep a proper lookout for the conditions on the road and other vehicles, and failed to maintain a safe distance between his vehicle and others. Mr. Poston's negligent conduct caused his vehicle to collide with the read of Ms. Priest's vehicle, sending Ms. Priest's vehicle on a dangerous line toward Ms. Cokely. Ms. Cokely's body was impacted at a high rate of speed, and caused her substantial, excruciating, and debilitating injuries. (See Exhibit B, Medical Records and Bills).

In a lineal sense, there are four factors, over which Mr. Poston had control, that could have prevented this accident. First, he could have been traveling at a reasonable rate of speed. Travelling at a slower pace may have allowed him to react to Ms. Priest's vehicle's slow right-turn into the library parking lot. Second, Mr. Poston could have maintained a safe distance between his vehicle and others. Specifically, if Mr. Poston would have maintained a safe distance between his vehicle and Ms. Priest's, this tragic incident may have been avoided. Third, Mr. Poston could have kept a proper lookout for the conditions on the road and other vehicles. In particular, if Mr. Poston would have seen Ms. Priest's vehicle directly in front on him, make a slow turn into the library parking lot, he could have slowed himself, and avoided the initial collision. Finally, and most importantly, Mr. Poston could not have been distracted while driving. If Mr. Poston would not have been looking and bending over trying to get a cup on his floorboard he would have been able to slow down in time to avoid the initial collision that ultimately led to Ms. Cokely's severe and excruciating injuries.

2

## II. DAMAGES

### Annie Cokely's Injuries

Ms. Cokely was a well known and dedicated member of the community. She was a hard worker and provided for her family. She lives and works in Georgetown, SC and is a successful mother to her daughter, Kierra Cokely, who was present during the incident as well.

Unfortunately, and due to the driving of Mr. Poston, Ms. Cokely sustained catastrophic bodily injures due to the total blunt force trauma from the impact, and the resulting injuries therefrom. (See Exhibit B, Medical Records and Bills). Specifically, Ms. Cokely suffered an open tibia/fibular fracture on the left side. She had a Glasgow coma scale of 15 on arrival. She had significant soft tissue de-gloving in the left lower extremity with circumferential skin loss in the mid-tibia area of the leg. Much of the skin had already debrided by the time she reached the hospital. She suffered serious skin lacerations and other injuries. In addition, prior to being taken to the hospital her clothes were destroyed and had to be cut off and her cell phone was destroyed. Further, the incident has resulted in Ms. Cokely's loss of memory and wages. Additionally, Ms. Cokely deals with severe pain on a day to day basis, she has undergone skin grafts, and has severe nerve damage. She is required to go to physical therapy on a daily basis. She no longer recognizes her life.

### Summary of Damages

Under South Carolina law, Ms. Cokely is entitled to damages under a negligence claim. The value of negligence claims vary widely from anywhere between several hundred thousand, and several hundred million dollars. Ms. Cokely is also entitled to receive compensation for her property damage, as well as punitive damages.

Ms. Cokely suffered catastrophic injures, and has permanent damages. Her medical bills alone are approaching $600,000.00, without taking into consideration any future surgeries or therapy she may need. Therefore, we conservatively estimate the value at $1,300,000.00.

Estimated Value: $1,300,000.00

### Punitive Damages

**Please also be aware that injuring a pedestrian due to recklessness, distracted driving, and other willful and wanton behavior subjects Mr. Poston punitive damages, and that punitive damages may not be able to be discharged in bankruptcy under federal law or South Carolina law.** Please be aware that, based on past precedent we expect this case to yield a verdict in excess of the policy limits. Accordingly, if you force this case to trial, the verdict is unlikely to be discharged in bankruptcy and we will follow Andrew Poston for the rest of his life and take any property, and possessions he may ever accumulate until the verdict is paid in full.

From 2008 to 2010, South Carolina was one of the five worst states for pedestrian safety, making potential jurors acutely aware of the risks of distracted and reckless driving. In fact, pedestrian deaths in South Carolina account for more than 10% of all traffic related fatalities in the state.

3

As a result, potential jurors may know, or know of, someone who was injured or killed as a result of reckless driving while on foot. It is our belief these facts will drive the verdict in this case to be particularly harsh. It is our hope that this case will stop Ms. Poston from ever driving while distracted and recklessly again.

III.    **DEMAND PURSUANT TO TYGER RIVER PINE CO. v. MARYLAND CASUALTY CO., 170 S.C. 286, 170 S.E. 346 (1933), and MAYES v. PAXTON, 313 S.C. 109, 437 S.E.2d 66 (1993).**

Based on Andrew Poston's reckless driving and complete disregard for the safety of others on the road, the fact that he was distracted at the time he caused the injuries to Ms. Cokely, Mr. Parker, the fact that punitive damages will be imposed against Mr. Poston, the significant mental and physical injuries Mr. Poston inflicted on Ms. Cokely, and the ongoing pain and mental anguish her family will experience for the rest of their lives, we conservatively estimate the value of this case to be in excess of the policy limits. As there is a possibility that underinsured motorist coverage may be available to Annie Cokely, we cannot offer a full and final release at this time. Instead, we require payment of the policy limits of all applicable policies, under which you insure Andrew Poston in a form that will not prejudice our client's right to seek recovery from any other insurance carriers. This offer of compromise requires that policy limits are **RECEIVED**[1] no later than 5:00 p.m. EDT on February 27, 2015, and requires that Andrew Poston provide sworn and notarized statements that there is no other insurance coverage available to him that could pertain to this loss. **THIS OFFER OF COMPROMISE INCLUDES A TIME-LIMITED DEMAND FOR PAYMENT OF POLICY LIMITS, AND, AT 5:00 P.M. EDT ON FEBRUARY 27, 2015, THIS OFFER WILL BE WITHDRAWN AND WE WILL OBTAIN AN EXCESS JUDGMENT AGAINST YOUR INSURED(S) WHICH WILL, IN TURN PROVIDE YOUR INSURED(S) WITH A CLAIM AGAINST Horace Mann Insurance Company PURSUANT TO TYGER RIVER PINE CO. v. MARYLAND CASUALTY CO., 170 S.C. 286, 170 S.E. 346 (1933) and MAYES v. PAXTON, 313 S.C. 109, 437 S.E.2d 66 (1993).** Please be aware that our demand for policy limits is not negotiable and that ALL conditions of this offer of compromise must be met by the specified time limit. *If any condition is not met, or if any additional condition is imposed by Horace Mann Insurance Company, including but not limited to conditions of indemnification or the waiver of any rights or claims not specified herein, this offer of compromise will be withdrawn, and we will obtain an excess judgment against your insured and enforce it against his assets.* This offer of compromise does not include the resolution of any claims for any person's or entities other than those injury and property damage claims made by Ms. Annie Cokely. *Accordingly, any request for a release of claims for other persons or entities and/or any request for indemnification will constitute a counteroffer and rejection of this offer of compromise.*[2] *If you include indemnification or a release of claims that could be*

---

[1] Settlement funds must be paid by Cashier's Checks, or Certified Bank Checks (not drafts) issued by your insurance company as follows: Annie Cokely and the Anastopoulo Law Firm, LLC. The checks must be **RECEIVED** in my office no later than 5:00pm EDT on February 27, 2015. Anastopoulo Law Firm, LLC's Tax I.D. Number is 452775649. For your convenience, our firm's W-9 is also attached hereto (Exhibit C). These funds should be mailed to 2557 Ashley Phosphate Road, North Charleston, SC 29418.

[2] Please be aware that we have done everything reasonable to warn you that even a mere request for

4

*made by other persons or entities in the proposed Release you send to us, it will constitute a counteroffer and rejection of this offer of compromise even if you claim in a cover letter or other documents that you send to us that you have accepted our offer. Acceptance of this offer specifically requires you to provide a proposed Release that complied with this offer by the above deadline.*[3]  Moreover, if there is any language in the proposed Release or any other documents you send us that requires or even requests Annie Cokely to make representations or warranties regarding the absence of medical liens or hospital liens or bankruptcy proceedings relating to Annie Cokely, the requirement or request will be considered a counteroffer and rejection, resulting in the immediate and permanent withdrawal of this offer.  Horace Mann Insurance Company is perfectly capable of reviewing court records to verify this information, and attempting to shift the cost of verifying this information to our client(s) is not acceptable and will be considered a counteroffer and rejection, resulting in the immediate and permanent withdrawal of this offer.[4]  Accordingly, please be aware that a requirement or even a request for

---

indemnification or a mere request for the waiver of any other rights or claims, including claims for loss of consortium or claims that could be made by or on behalf of any other person or entity, will be a rejection of this offer of compromise and will result in the immediate and permanent withdrawal of this offer of compromise and will place your insured's assets in jeopardy.  Please do not place such conditions on the settlement check or in any other documents you send to us to see if we will not notice and then claim it was an "accident" when we do notice.  We are aware that many insurance companies use this tactic, but it will not work against this firm and its clients.  Any placement of or request for restrictions not approved herein, whether "accidental" or not, will be a rejection of this offer of compromise and will result in the immediate and permanent withdrawal of this offer of compromise.

[3] Please do not attempt to send a proposed Release that includes indemnification or a release of any claims that could be brought by or on behalf of any person or entity other than our client, as we do not represent these persons or entities.  The insurance company tactic of including indemnification or a release of unrelated parties in the proposed Release will not work against this firm and its clients.  Please be aware that you cannot get around this requirement by sending a cover letter with a non-compliant proposed Release that says your "proposed Release is not a counteroffer." *If you send a proposed Release that includes indemnification or that violates any other terms of this offer, it is a counteroffer regardless of whatever you put in your cover letter.*  Pursuant to this offer of compromise, your insurance company cannot provide a letter that says it accepts our offer and then try to trick us by providing a proposed Release that does not comply with our offer.  Do not put indemnification language in the proposed Release you send to us in the hope that we will sign your proposed Release without reading it or in the hope that we will rely on a representation in your cover letter that you have accepted our offer of compromise when you have not provided a compliant release.  If you do put indemnification language in the proposed Release, it is a counteroffer even if you try to say it is not, and, if you try this tactic, we will proceed to verdict and take your insured's assets until it is paid in full.  Please also keep in mind that a proposed Release that includes the release of "any and all claims" would necessarily include claims not covered under this offer of compromise, such as loss of consortium, and is also a counteroffer and rejection.  Instead of acting in bad faith and trying to trick us, please just send a reasonable proposed Release that does not include indemnification or the release of property damage claims.  Acceptance of this offer of compromise requires you to make your acceptance through performance and not just mere words or promises.  Part of the performance required to accept this offer is for you to deliver a proposed Release with the settlement check.  Additionally, the proposed Release that is delivered with the settlement check must comply with the terms of this offer. *Regardless of what you might say in your cover letter, if the proposed Release does not comply with this offer, it is a rejection and counteroffer.*

[4] Please be aware that we have done everything reasonable to warn you that even a mere request for warranties or representations regarding the absence of medical liens or hospital liens or bankruptcy proceedings will be a rejection of this demand and will result in the immediate and permanent withdrawal

a "Lien Affidavit" or similar document by any other name will be considered a counteroffer and rejection, resulting in the immediate and permanent withdrawal of this offer. Additionally, please be aware that it will be deemed a counteroffer and rejection of this offer of compromise if Horace Mann Insurance Company requires or even requests the release of any individuals or entities other than Andrew Poston and Horace Mann Insurance Company.[5] Moreover, please be aware that Horace Mann Insurance Company will only be released with respect to the bodily injury and property damage coverages of the subject policy and that Horace Mann Insurance Company will not be released with respect to any other policies or coverages not identified herein. <u>Payment must be made as described herein, and payment by any other method, including payment through the registry of any court or through the filing of an interpleader action, will not satisfy the terms of this offer of compromise and will result in the immediate and automatic withdrawal of this offer of compromise. Additionally, filing a declaratory judgment action will result in the immediate, automatic, and permanent withdrawal of this offer of compromise.</u> Please be aware that, under South Carolina law, our offer of compromise must be accepted unequivocally and without variance of any sort and that a purported acceptance of this offer of compromises which imposes *or even requests* conditions beyond those contained in this offer will be construed as a counteroffer and rejection. Please also be aware, that under South Carolina law, we have no continuing duty to repeatedly remind you of the deadline or any conditions of our offer, herein. <u>See</u> Maxton v. Payes, 313 S.C. 109, 437 S.E.2d 66 (1993). Additionally, <u>any attempted counteroffer by Horace Mann Insurance Company will be deemed a rejection of our offer of compromise and will result in the immediate and permanent withdrawal of our offer of compromise.</u> Furthermore, please be aware that sworn and notarized statements that there is no other insurance coverage that could pertain to this loss must accompany your payment of policy

---

of this offer of compromise and will place your insured's assets in jeopardy. Please do not place such conditions on the settlement check or in any other documents you send to us to see if we will not notice and then claim it was an "accident" when we do notice. We are aware that many insurance companies use this tactic, but it will not work against this firm and its clients. Any placement of or request for restrictions not approved herein, whether "accidental" or not, will be a rejection of this demand and will result in the immediate and permanent withdrawal of this offer of compromise.

[5] Please be aware that we have done everything reasonable to warn you that even a mere request for the release of any individuals or entities other than Andrew Poston and Horace Mann Insurance Company will result in the immediate and permanent withdrawal of this offer of compromise and will place your insured's assets in jeopardy. *Moreover, please be aware that Horace Mann Insurance Company will only be released with respect to the bodily injury and property damage coverages of the subject policy and that Horace Mann Insurance Company will not be released with respect to any other policies or coverages not identified herein and that a request or requirement for a general release or a full and final release of Horace Mann Insurance Company will be a counteroffer and rejection of this offer of compromise.* Please do not place any additional releases on the settlement check, in the proposed Release, or in any other documents you send to us to see if we will not notice and then claim it was an "accident" when we do notice. We are aware that many insurance companies use this tactic, but it will not work against this firm and its clients. Any request for the release of any individuals or entities other than Andrew Poston and Horace Mann Insurance Company as described herein, whether "accidental" or not, will be a rejection of this offer of compromise and will result in the immediate and permanent withdrawal of this offer of compromise. Once again, if you send a proposed Release that purports to release any additional individuals or entities, it will be a counteroffer and rejection regardless of any claims of acceptance you make in a cover letter or any other documents you send to us. This offer of compromise requires you to deliver a proposed Release that complies with the terms of this offer of compromise. This offer of compromise requires you to make your acceptance through performance and not just mere words or promises.

6

limits. For your convenience, we have provided an affidavit that meets this condition. *Please be aware that sending a proposed Release, settlement check, or any other documents that include any conditions or provisions that are not part of this offer will be considered a counteroffer and rejection, resulting in the immediate and permanent withdrawal of this offer.*
Additionally, even if you send a cover letter that claims to "unconditionally" or "unequivocally" accept our offer of compromise, but you also send a proposed Release, a settlement check, or any other documents that include any conditions or provisions that are not part of this offer, it will be considered a counteroffer and rejection, resulting in the immediate and permanent withdrawal of this offer. Please do not attempt to trick us by saying in a letter that you accept our offer of compromise and then trying to sneak in additional terms that are not part of our offer. Our offer of compromise must be accepted by your insurance company's performance of the requirements of this letter and not by mere words that claims to accept the offer. Regardless of any statement that your insurance company has accepted or is accepting our offer of compromise, if your insurance company's actions and documents (i.e., your proposed Release, settlement check, etc.) do not comply with our offer of compromise, it will be a counteroffer and rejection of our offer. Acceptance of this offer of compromise requires performance and not just mere words or promises. Accordingly, in order to accept this offer of compromise, you must meet all of the terms and conditions of this offer of compromise, including, but not limited to, providing payment and a proposed Release that comply with the terms of this offer of compromise.

Please be aware that the only release we will accept is one that is limited in its scope to protecting your insured from Annie Cokely's rights to the personal assets of your insured. *Additionally, this offer relates only to personal injury and property damage claims (and not claims that could be made on behalf of any other person or entity); accordingly, a proposed Release or a statement on the settlement check or any other documents you send to us that purports to release or resolve "any and all claims" will be considered as a counteroffer and rejection of this offer, resulting in the immediate and permanent withdrawal of this offer.* Annie Cokely must not be prevented in any way from making a claim against her own insurance carriers. Despite the limited scope of our offer, our offer will protect the interests of your insured because it would only allow Annie Cokely to seek the proceeds of their own coverage and other applicable insurance policies relating to personal injuries and it would prevent Annie Cokely from seeking the assets of your insured as compensation for the personal injuries and property damages described herein.[6] If you do not pay policy limits and meet the other requirements contained in this offer within the specified time limit, we will withdraw our offer of compromise and we will obtain an excess judgment against your insured and enforce it against his assets. In view of existing circumstances, we believe your insurance company should accord its insured the same faithful consideration it gives its own interests. If you do not pay policy limits in this case and meet the other requirements contained in this offer, pursuant to the terms of this offer of compromise, Andrew Poston may be able to sue your company for compensatory and punitive damages for bad-faith failure to properly adjust this claim. **Please**

---

[6] Please be aware that it is our current belief that Annie Cokely may have had underinsured motorist coverage with policy limits far below the full value of this case. However, she may also have no coverage at all. Accordingly, since there is only a small amount of underinsured motorist coverage compared to the actual value of this case, Horace Mann Insurance Company's acceptance of this offer provides the greatest possible amount of protection for its insured. Thus, if Horace Mann Insurance Company fails to accept this offer, it will be exposing its insured to substantial excess liability and acting in bad faith towards its insured.

7

**explain to Andrew Poston that he has the right to hire an attorney to represent his against Horace Mann Insurance Company and that he has the right to demand that you pay this demand in order to protect his property and possessions.**

Please be aware that this letter constitutes Annie Cokely's formal offer and that no oral representations made before or after this letter can alter the terms of this offer. If, for any reason, this firm agrees to change this offer in any way, such changes can and will be made only in a writing that is signed by a member of this firm. The purpose of this paragraph is to specifically prevent Horace Mann Insurance Company from claiming that this offer was modified in any way by an oral communication. *Please be aware that, unless there has been a specific writing signed by a member of this firm that specifically changes this offer, the offer made by this letter has not been changed.* Additionally, there are and will be no oral offers made to resolve this case. Accordingly, please do not attempt to claim that there has been an oral offer to resolve this case because there has not been and will not be such an offer. *Any offer to resolve this case by Annie Cokely must be made in writing and any acceptance of that offer must be made through performance of the provisions of this offer of compromise in order for this firm and Annie Cokely to agree that a binding agreement has been formed. Specifically, this offer of compromise cannot be accepted by a mere statement of unconditional acceptance of this offer; instead, acceptance of this offer requires full performance of all terms and conditions of this offer. If any condition or requirement is not met by the specified deadline or if any additional condition or requirement is imposed upon Annie Cokely, then there has been no acceptance and no agreement.*

We have supplied you with all information necessary to evaluate this offer of compromise[7]; however, should you have any questions regarding this offer of compromise,

---

[7] Please be aware that we have provided you willful and sufficient information to evaluate this offer of compromise and to compel your insurance company to pay its policy limits as demanded. Nevertheless, we are aware that many insurance companies request unnecessary additional information within a few days of the deadline for payment as a tactic to delay the resolution of a case. We are aware that insurance companies make more money when settlements are delayed because the insurance company can continue to earn investment income from the settlement money for as long as the insurance company can maintain possession of the settlement funds. We are aware that many insurance companies use the tactic of requesting unnecessary additional information to delay payment, but it will not work against this firm and its clients. Additionally, in the unlikely event that there is a legitimate need for additional information, we will have to request that information from another party. Therefore, any request for additional information must be made as soon as possible and at least ten (10) days before the deadline so that we will have a reasonable opportunity to try and obtain the requested information. We have done everything reasonable to warn you that this offer of compromise includes a time-limited demand for the payment of policy limits. Please be aware that the deadline for payment and compliance with all other terms will not be extended based on a request for additional information because this offer of compromise already includes more than enough information to compel payment. Please do not place your insured's assets in jeopardy by incorrectly assuming that a request for additional information will extend the deadline of this offer of compromise. Failure to meet the deadline for any reason will be a rejection of this offer of compromise and will result in the immediate and permanent withdrawal of this offer of compromise.

please do not hesitate to contact me at (843) 614-8888. Additionally, although any requirement or request for terms and conditions of settlement and compromise that are not approved herein will constitute a counteroffer and rejection of this offer of compromise, if you feel that any part of this letter needs clarification in order for you to comply with its terms, we will be happy to offer any clarification of terms so that you have a full and fair opportunity to comply with this offer. Of course, this letter relates to discussions involving settlement and compromise, and nothing contained herein shall be deemed admissible except to enforce a claim for bad-faith failure to properly adjust this claim.

I look forward to hearing from you.

Sincerely,

Sam Flynn

Enclosures

Mailing: 2557 Ashley Phosphate Road, North Charleston, South Carolina 29418
Pee Dee: 150 W. Evans Street, Florence, South Carolina 29501

Appointment Only: Myrtle Beach * Columbia * Orangeburg * Wilmington, North Carolina

9

## AFFIDAVIT OF ANDREW POSTON

Personally appeared before me who, being duly sworn, states as follows:

1. My name is Andrew Poston.

2. As of February 10, 2014, I was known as Andrew Poston.

3. I am over the age of 18, and as of February 10, 2014, resided in Florence County, South Carolina.

4. On February 10, 2014, I was involved in a motor vehicle collision whereby I caused the incident that caused severe and catastrophic injuries to

5. At that time, the vehicle I was driving had a policy of insurance issued by Horace Mann Insurance Company.

6. That as of February 10, 2014, there were no other policies of insurance that would apply to compensate Annie Cokely for the losses incurred on that date.

FURTHER AFFIANT SAYETH NOT.


_____
Andrew Poston


Sworn to and Subscribed before me this

_____ day of _____ 2013

Notary Public for _____

My Commission Expires _____

_____

10



## Horace Mann®
— Founded by Educators for Educators

Auto  |  Home  |  Life  |  Annuity

February 20, 2015

Anastopoulo Law Firm, LLC
Attn: Sam Flynn
2557 Ashley Phosphate Road
North Charleston, SC  29418

RE:    Claim Number:      38968Z
       Date of Loss:      02/10/2014
       Named Insured:     Shanda Poston
       Your Client:       Annie Cokely

Dear Mr. Flynn:

Please be advised that this claim has been assigned to me for further handling. Please direct all future correspondence to my attention.

A recent review of this file indicates that we have previously tendered the $50,000 per person policy limits issued to our insured for settlement of bodily injury to your client, Annie Cokely. Our settlement offer is made for an exchange of a full and final release/Covenant not to Enforce Judgment Release.

Enclosed please find an Affidavits completed by our insured driver of the vehicle. Additionally, please also find the enclosed Release.

Please discuss this offer with your client at your earliest convenience and advise me of your position relative to settlement. Please have your client complete the Release and return so we may issue the settlement check. Should you wish to discuss this offer further in the interim, please feel free to contact me at your earliest convenience.



EXHIBIT

B



Auto | Home | Life | Annuity

Thank you for your cooperation and assistance. I look forward to the amicable resolution of this matter in the near future.

Sincerely,

Tanya Simmons

Horace Mann Property & Casualty Insurance Company
P.O. Box 962
Morrisville, NC 27560-0962
877-461-0012 Ext. 8007
Fax: 919-380-5994
Email: Tanya.Simmons@Horacemann.com

# Horace Mann
*Founded by Educators for Educators*

Auto | Home | Life | Annuity

Claim#:    38968Z
Date of Loss: 02/10/2014

## SETTLEMENT AGREEMENT AND
### COVENANT NOT TO
### ENFORCE JUDGMENT

KNOW ALL PERSONS BY THESE PRESENT, that for and inconsideration of the sum of **THOUSAND DOLLARS and no/100 ($        ,000)**, the undersigned does hereby release, remise and forever discharge        **AND HORACE MANN INSURANCE COMPANIES** from all claims, actions, cause or causes of action, suits, demands, costs (including prejudgment and post-judgment interest), and any and all damages recoverable against        under Policy Number **PA**        which the undersigned ever had, now has, or may have hereafter by reason or growing out of an automobile accident which occurred on or about DOL, **at or near**        .

In consideration of the foregoing payment, the undersigned does further expressly covenant and agree with        **AND HORACE MANN INSURANCE COMPANIES,** that should an action arising out of the above-referenced automobile accident be tried to a conclusion and Judgment entered against, such Judgment shall be credited with the        **THOUSAND DOLLARS and no/100 ($        ,000)** herein agreed to be paid.

The undersigned(s) does further covenant and agree that should an action be tried to a conclusion and a Judgment entered against        , in excess of the        **THOUSAND DOLLARS and no/100 ($        ,000)**, which has been issued by **HORACE MANN INSURANCE COMPANIES,** the undersigned will under no circumstances see satisfaction of or attempt to collect such Judgment, except to the extent that there may be other policies of insurance coverage, whether ecess, liability coverage, underinsured motorist coverage, or other insurance applicable to the undersigned loss, by levy or execution upon the property of        , nor shall the undersigned(s), her successors or assigns initiate any proceedings for the enforcement of such Judgment in any other manner against        .

Nothing in this Agreement shall be deemed to constitute any waiver nor shall this undersigned be estopped with reference to any and all other rights or claims which she may have under any underinsured motorist provisions of any policy under which he is entitled to coverage, or any other liability coverage which may be applicable, all such rights being expressly reserved. Nothing in this Agreement shall be deemed to waive nor shall the undersigned be estopped to enforce any Judgment rendered in the action against any excess or underinsured motorist carrier affording coverage to the undersigned and bound by any such Judgment.

The undersigned does further covenant and agree that at such time as his/her rights as against any excess liability carrier and/or underinsured motorist carrier shall have been adjudicated by final Judgment, and she has recovered such amounts to which he may be entitled by reason of any such excess liability or underinsured motorist coverage, any Judgment entered against shall be canceled of record in any and all counties in which the Judgement has been entered or transcribed.

This **agreement and Covenant Not to Enforce Judgment,** and the payment made with respect thereto is not to be construed as an admission of liability on the part of        . This Agreement contains the entire agreement between the parties hereto and the terms of this Agreement are contractual and not a mere recital.

By        signature below, the undersigned does affirm that he/she has carefully read the foregoing Agreement, understands the contents thereof, and signs the same as her own free act.



**Horace Mann**
*Founded by Educators for Educators*

Auto | Home | Life | Annuity

Claim #:      38968Z
Date of Loss:  02/10/2014

### State Mandated Insurance Fraud Warning, applicable in:

| STATE(S) | WARNING |
|---|---|
| AK, DE, FL, ID, IN, KY, MN, NH, OK | "Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony and may be prosecuted under state law." |
| AR, LA, MD, NJ, NM, OH, WV | "Any person who knowingly and/or willfully presents a false or fraudulent claim for payment of a loss or benefit or knowingly and/or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison." |
| CA | "Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison." |
| CA AUTO THEFT | "Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison. In the case of any claim arising from the theft of an insured vehicle, false representations made on the signed claim form by the insured subject the insured to a penalty of perjury." |
| CO | "It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies." |
| DC, ME, RI, TN, VA, WA, AL | "It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits." |
| NY | "Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation." |
| NY AUTO THEFT | "Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation." |
| PA | "Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal |

# Horace Mann
### Founded by Educators for Educators

Auto | Home | Life | Annuity

and civil penalties."

Claim #:       38968Z
Date of Loss: 02/10/2014

LM_Raleigh_Damages_022015_0224PM_128567

Feb. 20. 2015 10:22AM                                          No. 1942   P. 2

## AFFIDAVIT OF ANDREW POSTON

Personally appeared before me who, being duly sworn, states as follows:

1. My name is Andrew Poston.

2. As of February 10, 2014, I was known as Andrew Poston.

3. I am over the age of 18, and as of February 10, 2014, resided in Florence County, South Carolina.

4. On February 10, 2014, I was involved in a motor vehicle collision whereby I caused the incident that caused severe and catastrophic injuries to

5. At that time, the vehicle I was driving had a policy of insurance issued by Horace Mann Insurance Company.

6. That as of February 10, 2014, there were no other policies of insurance that would apply to compensate Annie Cokely for the losses incurred on that date.

FURTHER AFFIANT SAYETH NOT.

_Andrew Poston_
Andrew Poston

Sworn to and Subscribed before me this

20th day of Feb. 2013 2015

Notary Public for _SC_

My Commission Expires 9-29-2018

_Ramona Forbes_

RAMONA FORBES
NOTARY PUBLIC
STATE OF SOUTH CAROLINA

10

# ANASTOPOULO
## LAW FIRM

Akim A. Anastopoulo (SC)
Samuel R. Flynn (SC)
John I. Henderson (SC)
Marianthe L. Kolokithas (SC)
Eric M. Poulin (CA)(GA)(NC)(SC)
Casey Van Valkenburgh (SC)
P. Heath Ward (SC)
Katie M. Wilensky (SC)
Roy T. Willey, IV (SC)
Thomas Bailey Smith (SC)*
*Affiliate Counsel

Toll Free: 1 (800) 313-2546
Facsimile: (843) 853-2291

Reply to North Charleston Office
eric@akimlawfirm.com

March 5, 2015

Tanya Simmons
Horace Mann Property & Casualty Ins. Co.
Post Office Box 962
Morrisville, NC 27560-0962

Dear Ms. Simmons,

I am in receipt of your check [#4002150298] dated February 20, 2015, and the "Settlement Agreement and Covenant Not to Enforce Judgment" that was included therewith. As you know, by letter dated February 12, 2015, my client offered to settle her claims against your insured pursuant to an Offer of Compromise. Horace Mann failed to comply with the terms of that offer, and as a result we are returning your check to you and will proceed with filing suit against your insured.

As you know, and as stated in the Offer of Compromise, "under South Carolina law, we have no continuing duty to repeatedly remind you of the deadline or any conditions of our offer, herein. See Maxton v. Payes, 313 S.C. 109, 437 S.E.2d 66 (1993)." Nevertheless, let me remind you that our client's offer explicitly stated: "Please be aware that our demand for policy limits is not negotiable and that ALL conditions of this offer of compromise must be met by the specified time limit. *If any condition is not met, or if any additional condition is imposed by Horace Mann Insurance Company... this offer of compromise will be withdrawn...*" In our offer, we also make you *"aware that sending a proposed Release, settlement check, or any other documents that include any conditions or provisions that are not part of this offer will be considered a counteroffer and rejection, resulting in the immediate and permanent withdrawal of this offer."*

The package sent to us by Horace Mann with the check and Settlement Agreement and Covenant Not to Enforce Judgment did not accept the terms offered by our client to settle her claims against your insured. As an initial matter, the Offer of Compromise called for payment under all applicable policies, which necessarily includes any applicable BI or PD policies, as well as umbrella coverage, if any. It is our understanding that the policy in question provides, at a minimum, for $50,000 in per person bodily injury coverage and $50,000 in per occurrence property damage coverage. However, the check sent by Horace Mann was only for $50,000, an amount less than the applicable policy limits. Likewise, the draft and proposed covenant failed to comply with the terms of the Offer of Compromise. Therefore, we have been forced to return the check to you and file suit against your insured.

Mailing: 2557 Ashley Phosphate Road, North Charleston, South Carolina 29418
Pee Dee: 150 W. Evans Street, Florence, South Carolina 29501

Appointment Only: Myrtle Beach * Columbia * Orangeburg * Wilmington, North Carolina

EXHIBIT
C



## Horace Mann
*Founded by Educators for Educators*

| Date | Number | Amount |
|---|---|---|
| 02/20/2015 10:50:03 | 4002150298 | $50,000.00 |

| Claim Number | Sub | Loss Date | LOB | ST | Policy # | Region |
|---|---|---|---|---|---|---|
| 38968Z | 8 | 02/10/2014 | A | 39 | 77648490 | 75 |

**Insured:**
Poston, Shanda

**Check Issued By:**
Tanya Simmons

**Reason:**    Settlement of Bodily Injury claim on behalf of Annie Cokely

---

**DETACH BEFORE DEPOSITING**

THE FACE OF THIS CHECK IS PRINTED BLUE · THE BACK CONTAINS A SIMULATED WATERMARK

## Horace Mann
*Founded by Educators for Educators*

HORACE MANN PROPERTY & CASUALTY INSURANCE COMPANY (HPC)

Horace Mann Plaza    Springfield, IL    62715-0001
1-800-999-1030

Payable At: INB Illinois National Bank (217) 747-5540

DATE: 02/20/2015 10:50:03    20-2020    711

| Claim Number | Loss Date | ST | Policy # | Region |
|---|---|---|---|---|
| 38968Z | 02/10/2014 | 39 | 77648490 | 75 |

*Fifty thousand and 00/100 Dollars*

**Amount**
**********$50,000.00

**VOID AFTER 90 DAYS**

**PAY TO THE ORDER OF:**
Annie Cokely a single person and ANASTOPOULO LAW FIRM as her attorney

**MAIL TO:**
ANASTOPOULO LAW FIRM
2557 ASHLEY PHOSPHATE RD
NORTH CHARLESTON, SC 29418

Second signature required if amount is $10,000.00 or greater

# BROWN & BREHMER

Attorneys at Law
1720 Main Street, Suite 201
Post Office Box 7966
Columbia, South Carolina 29202
Telephone: (803) 771-6600
Facsimile: (803) 252-1620

Robert C. Brown
Karl S. Brehmer
E. Dale Lang
L. Darby Plexico, III
Ely O. Grote

Email
lawfirm@brownandbrehmer.com
bob.brown@brownandbrehmer.com
karl.brehmer@brownandbrehmer.com
dale.lang@brownandbrehmer.com
darby.plexico@brownandbrehmer.com
ely.grote@brownandbrehmer.com

March 13, 2015

Eric M. Poulin
Anastpolo Law Firm
2557 Ashley Phosphate Road
North Charleston, South Carolina 29418

RE:    Annie Cokley v Andrew Poston
       Case No.: 2014-CP-38-01564
       Claim Number: 38968z

Dear Eric:

I have been retained by Horace Mann Insurance Company to respond to your letter of March 5, 2015. I have reviewed your demand letter of February 12, 2015. Your demand states "we require payment of the policy limits of all applicable policies, under which you insure Andrew Poston in a form that will not prejudice our client's right to seek coverage from any other insurance" and "require Andrew Poston to provide a sworn and notarized statements that there is no other insurance coverage available to him". Horace Mann responded to your requests and provided a Covenant Not to Enforce Judgment, the Affidavit signed by Andrew Poston, and a settlement check made exactly as you requested. The settlement check was dated February 20, 2015 and mailed out on the same date. I do not understand why you returned the check.

In your March 5, 2015 letter, you claim there is Fifty Thousand Dollars ($50,000.00) of liability coverage for bodily injury claims and Fifty Thousand Dollars ($50,000.00) in coverage for property damage coverage. It is my understanding that this representation is correct. However, you did not make an additional property damage claim in your February 12, 2015 demand letter, and the property damage claim previously presented has been settled. Therefore, there is no property damage claim for the coverage to apply. Was there something that was missed?

The purpose of this letter is to re-offer the Fifty Thousand Dollars ($50,000.00) of bodily injury coverage on a Covenant Not to Enforce Judgment basis. Secondly, to ask you if you have some property damage for which you want to make a claim? Finally, please clarify your position because I'm not clear why you are rejecting the tender of the applicable limits. If you have some other basis for rejecting Horace Mann's offer and Covenant Not to Enforce Judgment please let

EXHIBIT
D

me know because there is nothing that I am aware of from my review that Horace Mann has done to prejudice your client. Please let me hear from you.

Sincerely yours,

Karl S. Brehmer

KSB/af

# BROWN & BREHMER

Attorneys at Law
1720 Main Street, Suite 201
Post Office Box 7966
Columbia, South Carolina 29202
Telephone: (803) 771-6600
Facsimile: (803) 252-1620

Robert C. Brown
Karl S. Brehmer
E. Dale Lang
L. Darby Plexico, III
Ely O. Grote

Email
rcb@brownandbrehmer.com
ksb@brownandbrehmer.com
edl@brownandbrehmer.com
ldp@brownandbrehmer.com
eog@brownandbrehmer.com

September 28, 2015

Sam Flynn
Anastopoulo Law Firm
62 Columbus Street
Charleston, South Carolina 29403

      RE:    Annie Cokley v Andrew Poston
               Case No.: 2015-CP-45-00170
               Claim Number: 38968z

Dear Sam:

On February 20, 2015, Horace Mann Property and Casualty Insurance tendered their per person bodily injury liability limit of Fifty Thousand Dollars ($50,000.00) to your client Annie Cokley. This offer was extended in the form of a Covenant Not to Enforce Judgment, a check for Fifty Thousand Dollars ($50,000.00), and a signed affidavit from Mr. Poston documenting that he had no additional insurance coverage.

However upon receipt of these documents and the settlement check, you returned the check indicating that Horace Mann had not properly complied with your demand. Please be advised that Horace Mann is again tendering their per person bodily injury liability limit of Fifty Thousand Dollars ($50,000.00) to your client Annie Cokley.

In your previous demand, there was no reference to any outstanding property damage. On April 30, 2014, two checks totaling $7547.00 were issued to Ms. Cokley. Horace Mann's records indicate that both checks cleared their bank on May 9, 2014 which signified an agreement and acceptance of the settlement. To date, we have not been presented with any additional property damage documentation. However, if you have any documentation to support additional property damage that has not been resolved, please provide it to me at this time for review. I look forward to your response. With warmest personal regards, I am

                         Sincerely yours,
                         *s/ Karl S. Brehmer*
                         Karl S. Brehmer

KSB/af
cc: Lori-Ann Russo Green



EXHIBIT

E

**BROWN & BREHMER**
Attorneys at Law
1720 Main Street, Suite 201
Post Office Box 7966
Columbia, South Carolina 29202
Telephone: (803) 771-6600
Facsimile: (803) 252-1620

Robert C. Brown
Karl S. Brehmer
E. Dale Lang
L. Darby Plexico, III
Ely O. Grote

Email
rcb@brownandbrehmer.com
ksb@brownandbrehmer.com
edl@brownandbrehmer.com
ldp@brownandbrehmer.com
eog@brownandbrehmer.com

October 19, 2015

**VIA EMAIL ONLY**
Sam Flynn
Anastopoulo Law Firm
62 Columbus Street
Charleston, South Carolina 29403

RE:     Annie Cokley v Andrew Poston
        Case No.: 2015-CP-45-00170
        Claim Number: 38968z

Dear Sam:

I hope this letter finds you doing well. Horace Mann Insurance Company has notified me that they have received a communication from GEICO, the underinsured motorist carrier, indicating that the Anastopoulo Law Firm has represented to GEICO that Horace Mann tendered both their bodily injury and property damage liability limits to the Plaintiff, Ms. Annie Cokley. As referenced in my letter to you dated September 28, 2015, I stated that if you had anything to support a claim for additional property damage that has not been resolved, Horace Mann would be willing to review. I've never received any return correspondence addressing that issue.

Horace Mann Insurance Company has Thirty Five Thousand Six Hundred Forty Six Dollars and 85/100 ($35,646.85) remaining of its property damage liability limit. If these remaining funds were offered as full and final settlement of the claim between your client and Horace Mann, and in exchange for a Covenant not to Execute as to Louie Andrew Poston, would that offer be acceptable? At this time, I do not have the authority from Horace Mann Insurance Company to make such an offer, but I can discuss this proposal with Horace Mann if such an offer could resolve this case.

Please call me to discuss this matter.

With warmest personal regards, I am

Sincerely yours,

Karl S. Brehmer

KSB/af
cc: Lori-Ann Russo Green

EXHIBIT
F

# ANASTOPOULO
## LAW FIRM

Akim A. Anastopoulo (SC)
Kate L. Bostrom (NC)
Samuel R. Flynn (SC)
Marianthe L. Kolokithas (SC)
Eric M. Poulin (GA)(NC)(SC)(CA)
Casey Van Valkenburgh (SC)(IL)
P. Heath Ward (SC)
Katie M. Wilensky (SC)
Roy T. Willey, IV (SC)
Evan P. Williams (SC)

Toll Free: 1 (800) 313-2546
Facsimile: (843) 494-5536

Reply to Columbus Street Office
**www.AkimLawFirm.com**

Tuesday, October 20, 2015

**VIA EMAIL ONLY**
Karl S. Brehmer
Brown & Brehmer
P. O. Box 7966
Columbia, SC 29202
ksb@brownandbrehmer.com

RE:    Annie Cokely v. Andrew Poston
       Case No.:  2015-CP-21-2245

Dear Karl:

I hope you are well.  I am in receipt of your letter dated October 19, 2015, wherein you state my firm has represented to GEICO that Horace Mann tendered both their bodily injury and property damage limits.  Of course, that is not true as Horace Mann has not done so, and upon having the opportunity to do so pursuant to my client's Offer of Compromise dated February 12, 2015, refused to do so, thereby putting its insured's and your client's personal assets at risk.

As you know, by letter dated March 5, 2015, my client was forced to withdraw that offer of compromise.  As my client made clear if Horace Mann refused to accept the offer, its rejection would result "in the immediate and permanent withdrawal of this offer." (See attached).  That is the current posture of the matter.  Therefore, Ms. Cokely is not in a position to accept anything less than the full damage she suffered as a result of the negligence of Mr. Poston.

Currently, her medical specials total more than $600,000.00, and the pain and loss of enjoyment of life has been far more severe.  Of course, if Horace Mann has now decided that it would like to put its insured's interests above its own, Ms. Cokely is happy to mediate or discuss settlement in the range of the actual value of the case.

If you should have any questions, please do not hesitate to contact us.

Sincerely,

Roy T. Willey IV

**EXHIBIT**
G

**Mailing: 62 Columbus Street, Charleston, South Carolina 29403**
North Charleston: 2557 Ashley Phosphate Road, North Charleston, South Carolina 29418
Pee Dee: 150 W. Evans Street, Florence, South Carolina 29501
Columbia: 1201 Main Street, Suite 1901, Columbia, South Carolina 29201

**Appointment Only:  Myrtle Beach * Wilmington, North Carolina**

IN THE STATE OF SOUTH CAROLINA )
COUNTY OF FLORENCE            )

ANNIE SKINNER, as Assignee of
ANDREW POSTON,

                          Plaintiff,

v.

HORACE MANN INSURANCE
COMPANY,

                          Defendant.

IN THE COURT OF COMMON PLEAS
FOR THE 12TH JUDICIAL CIRCUIT
CASE NO: 2017-CP-21-181

**PLAINTIFF'S FIRST SET OF
REQUESTS FOR PRODUCTION TO
DEFENDANT**

**TO: DEFENDANT HORACE MANN INSURANCE COMPANY, AND ALL COUNSEL
OF RECORD**

Plaintiff ANNIE SKINNER, as assignee of ANDREW POSTON ("Plaintiff") pursuant to

Rules 26 and 34 of the South Carolina Rules of Civil Procedure, hereby requests that the

Defendant, HORACE MANN INSURANCE COMPANY ("Defendant") respond within thirty

(30) days after the service hereof to the following requests, to wit, that Defendant produce and

permit Plaintiff to inspect, copy or photograph each of the following documents or things which

may be in the possession, custody or control of Defendant or its attorneys.

### DEFINITIONS AND INSTRUCTIONS

A.    These requests are deemed to be continuing, such as to require Defendant to file
and serve supplemental answers should it learn of additional information called for by these
requests between the time of trial and the time its answers are filed. Said supplemental answers
are required to be served within a reasonable time after the discovery of such additional
information.

B.    You are under a duty to promptly amend prior responses to these requests if you
obtain information upon the basis of which you know the response was incorrect when made or
you know the response, though correct when made, is no longer true.

C.    "You," "your," or "Defendant" means Defendant, HORACE MANN
INSURANCE COMPANY, its agents, partners, accountants, servants, employees, assignees,
lessees, affiliates or anyone acting on their behalf, and any affiliate, subsidiary, parent or related

1

corporation, partnership or entity, and anyone acting for or on behalf of any such subsidiary, related corporation, parent, partnership, entity, or natural person.

D.    "Person" means natural persons, corporations, partnerships, sole proprietorships, associations, federations, government agencies, or any other kind of entity.

E.    "Identify," when used with respect to an individual, means to state the person's full name and any aliases now or previously used by such person, to state and identify the person's present occupation and principal business affiliation and any other business affiliations; present home address and business address or addresses; and present and past business affiliations or relations including those (if any) with any of the parties to this civil action.

F.    "Identify," when used in reference to a person (as defined above) other than a natural person, means to state its full name; the nature of its organization including the name or the state under which it was organized; its address(es); the address(es) of its principal place(s) of business; its principal line(s) of business; and identify all known natural persons who serve as officers, directors, partners, owners, or in other supervisory, or ownership capacity in said organization. If any of the above information is not available to Defendant, state any other available means of identifying such person.

G.    "Defendant" shall refer to HORACE MANN INSURANCE COMPANY, its agents, partners, attorneys, accountants, servants, employees, assignees, lessees, affiliates or anyone acting on its behalf, and any affiliate, subsidiary, parent or related corporation, partnership or entity, and anyone acting for or on behalf of any such subsidiary, related corporation, parent, partnership, entity, or natural person.

H.    Please note "incident" refers to the loss that is the subject of the underlying action of <u>Annie Cokely v. Andrew Poston</u>.

## DOCUMENTS REQUESTED

1.    All documents identified in Defendant's answers to Plaintiff's First Set of Interrogatories.

2.    All documents referred to in preparing Defendant's answer to Plaintiff's First Set of Interrogatories.

3.    All photographs, videotapes, maps, plats, drawings, diagrams, measurements, surveys, or other descriptions related in any way to the subject matter of this action, made either before or after the incident that is the subject of this action.

4.    Any and all documents or other tangible items, including books, records, reports,

2

photographs, moving pictures, videotapes, drawings, charts, maps, diagrams, models, or other documentary materials or tangible objects that Defendant intends to rely upon to support Defendant, and or which Defendant intends to offer into evidence as exhibits or use as demonstrative aids at the trial of this action.

5.    All statements of any witnesses in the possession of Defendant or Defendant's attorney, whether written or recorded on a tape recorder or otherwise, that relates to the matters alleged in Plaintiff's Complaint or Defendant's Answer.

6.    All memoranda, notes, diagrams, reports, photographs, e-mails, computer data or documents, video tapes and audio tapes, or other materials relating in any way to the matters alleged or referred to in the Complaint, any injuries or damages claimed, and any defenses raised or which could reasonably be raised. As part of this production, this should include all photographs, video tapes and audio tapes of Defendant participating in any activity or event on or after the date of the accident/incident.

7.    To produce or permit Plaintiff or Plaintiff's attorney to inspect, photograph, and/or otherwise copy all photographs, plats, or diagram, Defendant or Defendant's attorney may have in which relate to the matter alleged herein.

8.    Any documents (as defined in Rule 34(a), SCRCP), and tangible things of whatever nature and description which you intend to introduce into evidence or to use as impeachment or evidence at the trial of this case.

9.    The most recent resume or curriculum vitae of any experts that will be used at trial or in preparing documents in response to this or other inquiries by Plaintiff.

10.    Copies of any statutes relied upon by Defendant in its Answer.

11.    Copies of any statutes relied upon by Defendant in any pre-trial motions.

3

12.     Copies of any statutes that will be relied upon by Defendant at trial.

13.     Results from any tests ordered by Defendant or any expert that is used to support the position of Defendant in this case.

14.     Receipts of all transactions with the experts used in trial preparation, including receipts for payment for services in this case.

15.     A complete copy of any insurance policies, including the declarations page(s), for any policies that might provide coverage to Defendant for the allegations contained in the Complaint,

16.     Returns to any subpoena or FOIA requests that you have served to date in this action, or any that are served in the future through the trial of this action.

17.     All training manuals related to the process used by Defendant for the settlement of claims made against Defendant's insureds and/or insurance policies held by insureds of Defendant.

18.     All instructional materials used in education programs related to the negotiation of claims against Defendant's insured's motor vehicle liability policy insurance policies.

19.     Any other instructional materials that are related to the training of employees in the processing of insurance claims made against Defendant's insureds, whether on paper, or in video, audio, or other electronic form for the past five years.

20.     Minutes and agendas for any meeting related to the limitation of exposure and the lowering of payouts on claims made against Defendant's insureds from a time five years prior to the claim filed by Plaintiff against Assignor until the present date.

21.     A copy of all protocols related to your interaction with re-insurance companies for the past five years.

22.     The underwriting file, including the policy, application, amendments and letters

4

between any adjusters, their supervisors, and any re-insurers that may have been involved in the valuation process of Plaintiff's claim against Assignor in the matter of <u>Annie Cokely v. Andrew Poston</u>.

23.    The report of any investigators that were assigned to the underlying claim of <u>Annie Cokely v. Andrew Poston</u> claim along with any documentation they have including picture, videos, and affidavits of witnesses.

24.    The entire files related to this claim of any investigators, independent contractors, employees or anyone that has knowledge of the <u>Annie Cokely v. Andrew Poston</u> claim, even if minimal.  Please include any notes, memorandum, emails, transcripts of recorded conversations, text messages, or correspondences with other employees.

25.    Any marketing materials and advertisements concerning the type of coverage that was in dispute in the <u>Annie Cokely v. Andrew Poston</u> case.  Please include all advertisements in any medium, including video, pamphlets, or mailings.

26.    All claims files for pending or previously disposed of litigation concerning bad faith or fraudulent claims practices of Defendant in the state of South Carolina for the past five years.

27.    Any files related to any state's insurance commissioner's investigations into the claims practices of Defendant for the past ten years.

28.    All notes, log entries, correspondence, internal memos, emails, texts messages (or transcript), between any of Defendant's employees related to Plaintiff's claim in the matter of <u>Annie Cokely v. Andrew Poston</u>.

29.    All letters from Defendant or its subsidiaries that are addressed to Plaintiff in any matter.

30.    Any internal memoranda discussing Plaintiff's claim in the matter of <u>Annie Cokely</u>

5

v. Andrew Poston.

31.     The application made by Assignor concerning the insurance policy subject to this action.

32.     The articles of incorporation for Defendant.

33.     The corporate tax returns of Defendant and any of its subsidiaries, parents, or sister corporations for the past ten years.

34.     Copies of all documents that are related in any way to programs, goals, or incentives employed by Defendant regarding claim cost reduction for claims made against Defendant's insureds.

35.     Copies of all documents that related in any way to any programs employed by Defendant regarding the eligibility for, earning of, considerations for, and awards of bonuses to adjusters, claims representatives, supervisors, and other employees who handle, supervise, or otherwise perform work on claims made against Defendant's insureds.

36.     Copies of personnel or other files related to job performance, evaluation, bonuses, wages, salary data, and disciplinary matters for all adjusters, claims representatives, supervisors and other employees of Defendant who handled, supervised, or otherwise performed work on Plaintiff's claim in the matter of Annie Cokely v. Andrew Poston.

37.     Any hidden claims files that include internal memoranda, minutes of internal meetings or roundtable discussion, or any other internal documents related to the processing and denial or refusal to pay out of Plaintiff's claim in the matter of Annie Cokely v. Andrew Poston.

38.     Copies of any complaints filed by or through the insurance commission of any state's insurance commissioner related to fraud or bad faith on behalf of Defendant or any of its subsidiaries or parent companies for the past ten years.

6

39.   Any contracts between parents, subsidiaries, or sister corporations that make those corporations liable for claims payouts or any portion of claims payouts for claims filed against Defendant's insureds for the past ten years.

40.   The resumes and entire personnel files, cover to cover, of any individuals who were involved in any way in the denial or refusal to pay Plaintiff's claim in the matter of <u>Annie Cokely v. Andrew Poston</u>.

41.   All education and training material, including seminar materials, pamphlets, booklets, transcripts of meetings, or any other materials related to the hiring or training of Defendant's insurance sales staff for the past five years.

42.   Copy of any reprimands, citations, or other disciplinary materials for any of the individuals involved in the processing, assessment, and denial of or refusal to pay Plaintiff's claim in the matter of <u>Annie Cokely v. Andrew Poston</u>.

43.   Any actuarial memos filed with the insurance commission of any state or internal actuarial memos used by Defendant in evaluating the profitability of insurance contracts similar to the one at issue in the case of <u>Annie Cokely v. Andrew Poston</u>.

44.   Any loss experience ratios for the type of contract at issue in the matter of <u>Annie Cokely v. Andrew Poston</u> for the five years preceding Plaintiff's claim.

## <u>DOCUMENTS THAT WOULD BE OVERLY BURDENSOME TO PRODUCE</u>

a)   List all documents that are excluded pursuant to Rule 26(b)(2) related to the electronic discovery.  List in detail their location, contents, and the specific burden that would be upon Defendant in producing same.

b)   For all other documents Defendant determines would be overly burdensome to produce, to permit Plaintiff or Plaintiff's attorney to inspect, photograph, and/or otherwise copy all photographs, plats, diagrams, documents, or electronic media Defendant

7

or the Defendant's attorney may have which relate to the matter alleged herein. <u>To the extent an objection is made on the basis of "overly burdensome" or some related basis, provide all documents that defense counsel contends are within a reasonable time frame, geographic range, etc.</u>

## PRIVILEGE LOG

For each document that would be required to be produced but for a privilege asserted against producing it, set forth:

a) The date the document was generated;
b) The type of document (e.g., letter, memorandum, record, etc.);
c) The name of the person who prepared the original;
d) The name and address of the person who received the original;
e) The name and address of anyone who received a copy;
f) A general description of the information recorded in the document;
g) The ground on which production is objected to;
h) The name of each person, in addition to those identified in (a) through (e) of this subpart, known to have seen or have access to the document; and
i) The name of the person who now possesses the document.

## DOCUMENTS NO LONGER IN EXISTENCE OR NO LONGER CONTROLLED OR POSSESSED

If any requested document existed at one time in the possession, custody, or control of any party but has been lost, discarded or destroyed, or removed from the party's possession, custody or control, indicate for each such document:

a) Its identity (i.e., a description of its contents its date, title, and type of document);
b) When it was most recently in the possession, custody or control of the party and what;
c) Identify any person who currently possesses the document;
d) State whether the document was transferred or destroyed;
e) State the person who transferred or destroyed the document and the person who authorized or knows of its transfer or destruction;
f) State the reason the document was transferred or destroyed; and

8

g) Identify, by providing name, address, and daytime telephone number, all persons having knowledge or the contents of each document.

Respectfully submitted,

ANASTOPOULO LAW FIRM, LLC

BY

Eric M. Poulin, Esquire
S.C. Bar No.: 100209
Roy T. Willey, IV, Esquire
S.C. Bar No.: 101010
Benjamin W. Lee, Esquire
S.C. Bar No.: 103213
32 Ann Street
Charleston, SC 29403
(843) 614-8888

**ATTORNEYS FOR PLAINTIFF**

Charleston, South Carolina
Date: March 3, 2018

9

IN THE STATE OF SOUTH CAROLINA )  IN THE COURT OF COMMON PLEAS
COUNTY OF FLORENCE           )  FOR THE 12TH JUDICIAL CIRCUIT
                              CASE NO: 2017-CP-21-181

ANNIE SKINNER, as Assignee of
ANDREW POSTON,

              Plaintiff,

    v.                      **PLAINTIFF'S FIRST SET OF**
                            **INTERROGATORIES TO DEFENDANT**

HORACE MANN INSURANCE
COMPANY,

              Defendant.

**TO:  DEFENDANT UNITED AUTOMOBILE INSURANCE COMPANY AND ALL COUNSEL OF RECORD**

    Plaintiff, ANNIE SKINNER, as assignee of ANDREW POSTON ("Plaintiff"), requests that Defendant, HORACE MANN INSURANCE COMPANY ("Defendant"), answer under oath, separately and fully in writing, the following interrogatories pursuant to Rules 26 and 33 of the South Carolina Rules of Civil Procedure. These interrogatories are deemed to be continuing, and if complete answers to any of them are presently unavailable, supplemental answers are required at the time the information becomes available and prior to trial.

### DEFINITIONS AND INSTRUCTIONS

    A.    These requests are deemed to be continuing, such as to require Defendant to file and serve supplemental answers should it learn of additional information called for by these requests between the time of trial and the time its answers are filed. Said supplemental answers are required to be served within a reasonable time after the discovery of such additional information.

    B.    You are under a duty to promptly amend prior responses to these requests if you obtain information upon the basis of which you know the response was incorrect when made or you know the response, though correct when made, is no longer true.

    C.    "You," "your," or 'Defendant" means Defendant, HORACE MANN INSURANCE COMPANY, its agents, partners, accountants, servants, employees, assignees, lessees, affiliates or anyone acting on their behalf, and any affiliate, subsidiary, parent or related corporation, partnership or entity, and anyone acting for or on behalf of any such subsidiary, related corporation, parent, partnership, entity, or natural person.

1

D.    "Person" means natural persons, corporations, partnerships, sole proprietorships, associations, federations, government agencies, or any other kind of entity.

E.    "Identify," when used with respect to an individual, means to state the person's full name and any aliases now or previously used by such person, to state and identify the person's present occupation and principal business affiliation and any other business affiliations; present home address and business address or addresses; and present and past business affiliations or relations including those (if any) with any of the parties to this civil action.

F.    "Identify," when used in reference to a person (as defined above) other than a natural person, means to state its full name; the nature of its organization including the name or the state under which it was organized; its address(es); the address(es) of its principal place(s) of business; its principal line(s) of business; and identify all known natural persons who serve as officers, directors, partners, owners, or in other supervisory or ownership capacity in said organization. If any of the above information is not available to Defendant, state any other available means of identifying such person.

G.    "Defendant" shall refer to HORACE MANN INSURANCE COMPANY, its agents, partners, attorneys, accountants, servants, employees, assignees, lessees, affiliates or anyone acting on its behalf, and any affiliate, subsidiary, parent or related corporation, partnership or entity, and anyone acting for or on behalf of any such subsidiary, related corporation, parent, partnership, entity, or natural person.

H.    The term "claim" within these interrogatories refers to the claim for the underlying incident, which is the basis for Plaintiff's Complaint.

I.    **NOTE**:  If Defendant contends that any interrogatory is "overly broad," please respond with a time frame or breadth that Defendant finds appropriate so that we may attempt to limit taking discovery issues before the Court.

## STANDARD INTERROGATORIES

1.    Give the names, addresses, and telephone numbers of persons who may be witnesses concerning the facts of this action or who have knowledge of relevant facts concerning this incident, and indicate whether or not written or recorded statements have been taken from the witnesses, and indicate who has possession of such statements.

2.    For each person listed in response to Interrogatory No. 1, set forth either a summary sufficient to inform the Plaintiff of the important facts known to or observed by such witness or, if applicable, provide a copy of any written or recorded statements taken from such witnesses.

3.    Set forth a list of photographs, plats, sketches, or other prepared documents in

2

possession of the Defendant, or counsel, that relates to the claim or defense in this case.

4.    Set forth the names and addresses of all insurance companies which have insurance coverage or property damage coverage relating to the claim, and set forth the number or numbers of the policies involved and the amount or amounts of liability coverage provided in each policy.

5.    List the names, addresses, and telephone numbers of any individual whom you propose to use as an expert witness at the trial of this action and for each state in detail their qualifications to testify and the substance of his or her opinions and the basis for his or her opinion.

6.    If Defendant is improperly identified, give the proper identification and state whether counsel will accept service of an amended Summons and Complaint reflecting the correct information.

7.    List any and all individuals that are responsible for the claim filed by Plaintiff regarding the "incident" or a "claim" which hereinafter shall refer to the matter of <u>Annie Cokely</u> <u>v. Andrew Poston</u>. Please include specifically, the local agent, any supervisors (from any branch offices, regional offices, and national offices), claim reviewers, and any other individuals directly responsible for this claim.

8.    List the name of any investigators and any witnesses spoken to by those investigators during the processing and valuation of this claim and indicate whether any written or recorded statements have been taken and who is in possession of such statements.

9.    List the name, current mailing address, and phone number(s) of each person or entity to which any insurance adjuster, claims representative, supervisor or other employee of Defendant has spoken or written while investigating the claim and indicate whether such consultation was recorded or reduced to writing and who is in possession of the writing or recording.

3

10.    Please describe, in detail, Defendant's routine process for handling claims, specifically motor vehicle collision liability claims, when timely submitted against Defendant's insureds.

11.    Please describe in full any departures from routine practices in the handling of this claim(s) and the justifications, if any, for such departures from established processing routines.

12.    State what facts were known to the claims adjuster when the claim was denied and/or not paid, including any information about the accident, the parties involved, and any other circumstances that were used in making the determination for the claim.

13.    To what extent are employees of Defendant rewarded for the inexpensive disbursement of claims?

14.    Describe any bonus systems that reward employees for the inexpensive disbursement of claims.

15.    Have the claims practices of Defendant ever been evaluated by the insurance commissioner of any state for fraudulent or bad faith practices in the past ten years? If so, please include the disposition of those investigations, the circumstances that led to them, their location, and their date.

16.    List the title and case name of any other bad faith or fraud claims against Defendant or its subsidiaries, whether pending or previously adjudicated, in the past ten years. Please include the party names, the date or trial, the disposition of the case and the case number.

17.    What was the amount of the reserve set on Plaintiff's claim with regard to the underlying motor vehicle collision?

18.    List specifically the reasons for the denial and/or refusal to pay of Plaintiff's claim with regard to the underlying motor vehicle collision. Include in detail the process that was used

4

and what factors resulted in the denial and/or refusal to pay the claim.

19.    Describe the process by which Defendant determines the amount of reserves for claims with made against Defendant's insureds for the past five years.

20.    Describe the process that was used to determine any reserve for Plaintiff's claim.

21.    If an electronic program is used in calculating a reserve amount on a claim, describe the name of the program, the company that designed the program, and the process that is used by that program in determining the reserve amount. Include specifically what variables are entered into the program, the formula used by the program, and the type of result produced (whether it is a single value, a range, or has any qualitative descriptors).

22.    Describe in detail the data retention plan for disputed automobile collision claims. Describe both the general policy and specifically what measures were implemented to maintain the integrity of Plaintiff's claim file as to the underlying motor vehicle collision.

23.    How often does Defendant have meetings regarding limiting its exposure by reducing the payouts on insurance claims made against its insureds? Please give the schedule of such meetings for three years prior to the underlying motor vehicle collision claim until the present date.

24.    For each person identified as an employee, independent contractor, investigator, person who was or otherwise involved in the underlying motor vehicle collision claim, state:

   a. The date on which the person became involved in the claim;
   b. The reason why the person became involved in the claim;
   c. If they are no longer involved, the date on which they ceased involvement and the reason for the cessation of their involvement; and
   d. If applicable, any reprimands, warnings, demotion, citations, or other disciplinary action taken with respect to the person based upon their action or inaction with respect to the claim.

25.    What does the Defendant contend to be the standard of care necessary to satisfy the

5

duty of good faith and fair dealing in motor vehicle liability claims arising from incidents that occur in South Carolina and insured by policies issued in South Carolina?

26.     As to each expert witness listed in response to Interrogatory No. 5 above, please state:

        a.  A complete statement of all opinions the witness will express and the basis and reasons for them;
        b.  The data and other information considered by the witness in forming the opinions;
        c.  A description of any exhibits the witness or counsel intends to introduce to summarize or support these opinions (to be provided in response to Requests for Production);
        d.  The witness's qualifications, including a list of all publications authored in the previous ten years;
        e.  A list of all other cases in which, during the previous five years, the witness testified as an expert at trial or by deposition; and
        f.  A statement of the compensation to be paid for the study and testimony in the case.

27.     For each affirmative defense that is raised in your Answer, please state with particularity each and every fact or basis in law upon which you allege to have "good grounds," as defined in Rule 11, SCRCP, to assert such a defense. A full and complete response should include, for each defense:

        a.  Identify all witnesses that support this contention;
        b.  Identify all writings that support this contention;
        c.  Identify all court cases upon which you base this contention; and
        d.  Identify all statutes that you rely on to support this contention.

28.     For all photographs relating to this case which are in the possession of Defendant or Defendant's counsel, please provide:

        a.  A brief description of the content of the photograph;
        b.  The date the photograph was taken; and
        c.  The name, address and employer of the person who took the photograph.

29.     State your net worth.

Respectfully Submitted,


ANASTOPOULO LAW FIRM, LLC


Eric M. Roulin, Esquire
S.C. Bar No.: 100209
Roy T. Willey, IV, Esquire
S.C. Bar No.: 101010
Benjamin W. Lee, Esquire
S.C. Bar No.: 103213
32 Ann Street
Charleston, SC 29403
(843) 614-8888

**ATTORNEYS FOR PLAINTIFF**

Charleston, South Carolina
Date: March 3, 2018

7

Summons and complaint on within entitled cause received at this office and service accepted in accordance with law this ___6___ day of _Ma. ___

*Raymond St. Farmer*

Director of Insurance
and Attorney to Accept Service
Columbia, SC

STATE OF SOUTH CAROLINA
**DEPARTMENT OF INSURANCE**
P.O. BOX 100105
COLUMBIA, S.C. 29202-3105



9489 0090 0027 6033 0880 35



U.S. POSTAGE ≫ PITNEY BOWES

ZIP 29201  $ 008.05⁰
02  4W
0000345957 MAR  06  2018

# CERTIFIED MAIL

# RETURN RECEIPT REQUESTED

# SERVICE OF PROCESS

HORACE MANN INSURANCE COMPANY
c/o CORPORATION SERVICE COMPANY
1703 Laurel Street
COLUMBIA, SC 29201-0000