UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Annie Skinner, *as assignee of* Andrew Poston, | Civil Action No.: 4:18-cv-00922-RBH |
| Plaintiff, | |
| v. | **ORDER** |
| Horace Mann Insurance Company, | |
| Defendant. | |

This matter is before the Court on Defendant's motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6). *See* ECF No. 16. The Court grants in part and denies in part Defendant's motion for the reasons herein.[1]

**Background**

On February 10, 2014, Plaintiff Annie Skinner was "severely injured and suffered extensive property damage" when she was involved in an automobile accident with Andrew Poston and another driver. Amended Complaint [ECF No. 1-1] at ¶ 11; Am. Compl. Exh. A [ECF No. 1-1 at p. 21]. At the time, Defendant Horace Mann Insurance Company insured Poston through an automobile insurance policy providing bodily injury liability limits of $50,000 per person/$100,000 per accident and a property damage liability limit of $50,000 per accident.[2] Am. Compl. at ¶ 10; *see* ECF No. 16-2 at p. 1.

---

[1] The Court decides the motion without a hearing pursuant to Local Civil Rule 7.08 (D.S.C.).

[2] Defendant and Plaintiff both agree the amended complaint mistakenly alleges the property damage liability limit is $25,000 rather than $50,000. *See* ECF No. 16-1 at p. 3 n.2; ECF No. 17 at p. 2 n.2. Plaintiff explains this mistake is a scrivener's error, *see* ECF No. 17 at p. 2 n.2, and the attachments to the amended complaint and Defendant's motion confirm that limit is $50,000. *See, e.g.*, Am. Compl. Ex. C [ECF No. 1-1 at p. 36]; ECF No. 16-2 at p. 1 (policy declarations).

In April 2014, Defendant issued Plaintiff two checks totaling $7,547, and in May 2014, both checks cleared the bank. *See* Am. Compl. Exh. E [ECF No. 1-1 at p. 40].

On February 12, 2015, Plaintiff's counsel sent Defendant a demand letter offering to settle all claims against Poston in exchange for the full amount of Poston's liability insurance policy limits—$100,000 (i.e., *both* the $50,000 bodily injury liability limit *and* the $50,000 property damage liability limit). *See* Am. Compl. Exh. A; ECF Nos. 16-5 & 16-6. The nine-page letter (laden with lengthy footnotes) set a two-week deadline, imposed various requirements and conditions, and had over 200 pages of attachments primarily consisting of Plaintiff's medical records.[3] *See id.* The letter described Plaintiff's physical injuries and further noted her clothes and cell phone were destroyed in the accident. *See* Am. Compl. Exh. A. Besides the clothes and cell phone loss, no other property damage was identified in the letter or the attachments thereto.

On February 20, 2015, Defendant sent Plaintiff's counsel a check for the $50,000 bodily injury liability limit and a proposed settlement agreement (and a covenant not to enforce judgment). *See* Am. Compl. at ¶ 16; Am. Compl. Exh. B [ECF No. 1-1 at pp. 30–34]; Am. Compl. Exh. C [ECF No. 1-1 at pp. 36–37]. However, on March 5, 2015, Plaintiff's counsel returned the $50,000 check in a letter asserting Defendant "failed to comply with the terms of" the February 12, 2015 offer because

> the Offer of Compromise called for payment under all applicable policies, which necessarily includes any applicable BI or PD policies, as well as umbrella coverage, if any. It is our understanding that the policy in question provides, at a minimum, for $50,000 in per person bodily injury coverage and $50,000 in per occurrence property damage coverage. However, the check sent by Horace Mann was only for $50,000, an amount less than the applicable policy limits. . . . Therefore, we have been forced to return the check to you

---

[3] The other attachments were an affidavit from Poston and a South Carolina Traffic Collision Report Form. *See* ECF No. 16-5 at pp. 10–13.

and file suit against your insured.

Am. Compl. Exh. C; *see* Am. Compl. at ¶ 17.

On March 13, 2015, Defendant's attorney sent a letter to Plaintiff's counsel stating, "I do not understand why you returned the check." Am. Compl. Exh. D [ECF No. 1-1 at pp. 38–39]; *see* Am. Compl. at ¶ 18. The letter further stated:

> In your March 5, 2015 letter, you claim there is Fifty Thousand Dollars ($50,000.00) of liability coverage for bodily injury claims and Fifty Thousand Dollars ($50,000.00) in coverage for property damage coverage. It is my understanding that this representation is correct. However, you did not make an additional property damage claim in your February 12, 2015 demand letter, and the property damage claim previously presented has been settled. Therefore, there is no property damage claim for the coverage to apply. Was there something that was missed?
>
> The purpose of this letter is to re-offer the Fifty Thousand Dollars ($50,000.00) of bodily injury coverage on a Covenant Not to Enforce Judgment basis. Secondly, to ask you if you have some property damage for which you want to make a claim? Finally, please clarify your position because I'm not clear why you are rejecting the tender of the applicable limits. If you have some other basis for rejecting Horace Mann's offer and Covenant Not to Enforce Judgment[,] please let me know because there is nothing that I am aware of from my review that Horace Mann has done to prejudice your client. Please let me hear from you.

Am. Compl. Exh. D.

On April 6, 2015, Plaintiff filed a negligence lawsuit against Poston in state court.[4] *See* Am. Compl. at ¶ 13; ECF No. 16-3. The case proceeded to trial, and on August 25, 2016, the jury returned a verdict in Plaintiff's favor for five million dollars in actual damages.[5] *See* Am. Compl. at ¶¶ 34–35;

---

[4] It is unclear whether Plaintiff's counsel answered the March 13, 2015 letter before suing Poston.

[5] In September and October 2015, additional correspondence occurred between Defendant's attorney and Plaintiff's counsel but did not result in a settlement. *See* Am. Compl. Exhs. E, F, & G [ECF No. 1-1 at pp. 40–42]. Defendant paid Plaintiff $50,090 in partial satisfaction of the judgment; thus, the unsatisfied portion of the judgment

3

ECF No. 16-7.

On July 14, 2017, Plaintiff and Poston entered into an "Assignment, Covenant to Postpone Execution and Agreement to Cooperate in Litigation." *See* Am. Compl. at ¶ 39; ECF No. 17-9. Under this agreement, Poston "irrevocably assign[ed]" Plaintiff "all legally assignable rights, remedies, titles, and/or interest in his claim for damages against Horace Mann," including "contract/tort claims . . . arising from the failure of Horace Mann to accept [Plaintiff]'s reasonable offer to settle for [Poston]'s policy limits." ECF No. 17-9 at p. 2.

Thereafter, Plaintiff filed the instant action in state court against Defendant. *See* ECF No. 1 at p. 1. On February 1, 2018, Plaintiff filed an amended complaint asserting four causes of action: (1) breach of contract, (2) negligence/gross negligence, (3) bad faith, and (4) negligence per se. *See* Am. Compl. at ¶¶ 41–87.

On April 5, 2018, Defendant removed the action to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332, and also filed an answer. *See* ECF Nos. 1 & 4. Defendant subsequently filed the instant motion to dismiss Plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* ECF No. 16. Plaintiff filed a response in opposition, and Defendant filed a reply. *See* ECF Nos. 17 & 19.

## **Legal Standard**

"To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 395 (4th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

---

totals $4,949,910.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[A] plaintiff must provide sufficient detail to show that he has a more-than-conceivable chance of success on the merits." *Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018) (alterations omitted).

The Fourth Circuit has explained that documents attached to the complaint as well as documents submitted with the motion to dismiss may be considered in certain circumstances:[6]

> A motion to dismiss tests the sufficiency of a complaint, and our evaluation is thus generally limited to a review of the allegations of the complaint itself. However, we also consider documents that are explicitly incorporated into the complaint by reference, and those attached to the complaint as exhibits. And, . . . we may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity.

*Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (internal quotation marks and citations omitted). "A Rule 12(b)(6) motion tests the sufficiency of a complaint; it does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (internal quotation marks omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

### **Discussion**

Defendant argues it "is entitled to dismissal of Plaintiff's claims because, as a matter of law, [it]

---

[6] Various exhibits are attached to Defendant's motion and Plaintiff's response. *See* ECF Nos. 16-2 through 16-7; ECF Nos. 17-1 through 17-9. Neither party appears to contest the integrity or authenticity of the exhibits.

had no duty under the *Tyger River*[7] doctrine to comply with Plaintiff's unreasonable demand letter."
ECf No. 16-1 at p. 5. In a nutshell, Defendant contends Plaintiff's demand for the $50,000 property damage liability limit was unreasonable because the extent of her claimed additional property damage was the loss of one outfit and one cell phone. *Id.* at pp. 5–6. Thus, Defendant seeks dismissal of "Plaintiff's causes of action, all of which are premised on such unreasonable demand [and] fail as a matter of law under the *Tyger River* doctrine." *Id.* at p. 6.

As mentioned above, Plaintiff asserts four causes of action in her amended complaint: (1) breach of contract, (2) negligence/gross negligence, (3) bad faith, and (4) negligence per se.

The Court concludes the amended complaint states plausible claims for **breach of contract** and **bad faith**. As for breach of contract, the amended complaint sufficiently alleges that Poston[8] and Defendant had an insurance contract, that Defendant breached this contract by not settling for the full amount of coverage available under the policy (i.e., *both* the $50,000 bodily injury *and* the $50,000 property damage liability limits), and that Defendant's breach caused Poston damage when Plaintiff obtained a judgment against him after the case failed to settle and proceeded to trial. *See Allegro, Inc. v. Scully*, 791 S.E.2d 140, 145 (S.C. 2016) ("In an action for breach of contract, the burden is on the plaintiff to prove the contract, its breach, and the damages caused by such breach."). As for bad faith, the amended complaint sufficiently alleges that a mutually binding insurance contract existed between Poston and Defendant, that Defendant refused to pay benefits (i.e., the full $100,000 in coverage) due

---

[7] *Tyger River Pine Co. v. Maryland Cas. Co.*, 170 S.E. 346 (S.C. 1933). In *Tyger River*, the South Carolina Supreme Court held "that an insurer's unreasonable refusal to settle within policy limits subjects the insurer to tort liability." *Nichols v. State Farm*, 306 S.E.2d 616, 618 (S.C. 1983).

[8] As indicated above, Poston assigned his rights to Plaintiff. *See generally BAC Home Loan Servicing, L.P. v. Kinder*, 731 S.E.2d 547, 549 (S.C. 2012) ("An assignee stands in the shoes of the assignor. Thus, an innocent assignee receives all the rights of his assignor." (internal citation omitted)).

6

under that contract, that this refusal resulted from Defendant's *alleged* bad faith/unreasonable action, and that Poston suffered damage when he went to trial and incurred a multi-million dollar judgment against him. *See Cock-N-Bull Steak House, Inc. v. Generali Ins. Co.*, 466 S.E.2d 727, 730 (S.C. 1996) (listing the four elements of an insurance bad faith claim).[9] Accordingly, the Court cannot dismiss the breach of contract and bad faith claims **under Rule 12(b)(6).**[10]

---

[9] Defendant asserts that these four elements "are frequently cited in bad-faith refusal to pay first party benefits" and that "[n]o South Carolina [c]ourt has recognized and applied these elements in the context of a bad faith third-party liability claim." ECF No. 19 at p. 5 n.2. However, the S.C. Supreme Court has explained that "the first-party cause of action [recognized in *Nichols*, *supra*] is in reality **merely a different aspect of the duty first identified by this Court in *Tyger River***"; that "[i]n *Tyger River*, we held an insurer's unreasonable refusal to settle within policy limits subjects the insurer to liability"; and that "[t]he application of the *Tyger River* Doctrine to an insurer's handling of a claim for first-party benefits was a natural extension of the policy behind the doctrine." *Charleston Cty. Sch. Dist. v. State Budget & Control Bd.*, 437 S.E.2d 6, 10 (S.C. 1993) (emphasis added); *see also Nichols*, 306 S.E.2d at 619 ("The cause of action we consider today and that which is commonly known as the 'Tyger River Doctrine,' **are merely two different aspects of the same duty**." (emphasis added)).

[10] The Court notes Defendant makes strong, compelling arguments regarding whether its refusal to pay the $50,000 property damage liability limit was reasonable or not. As Defendant points out, Plaintiff initially accepted the two checks for $7,547, and it was over six months later that her counsel sent the *Tyger River* demand letter seeking the full $50,000 property damage liability limit (in addition to the $50,000 bodily injury liability limit) *but only identifying a lost phone and outfit as the sole additional property damage*. When Defendant's attorney logically sent Plaintiff's counsel subsequent correspondence seeking clarification as to the additional property damage, Plaintiff's counsel refused to budge on the demand for the full policy limits. The case may very well be that *Plaintiff's/her counsel's* conduct was unreasonable—not Defendant's—but the Court is constrained by the legal standard for a Rule 12(b)(6) motion, which merely "tests the sufficiency of a complaint" but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *See King*, 825 F.3d at 214. Even though "actual proof of those facts [alleged by Plaintiff] is improbable" and "a recovery is very remote and unlikely," Plaintiff's "well-pleaded complaint may proceed" at this stage in the litigation. *Twombly*, 550 U.S. at 556.

In short, the strong arguments in Defendant's motion to dismiss are better raised and addressed by the Court via a motion for summary judgment. *See, e.g.*, *Tucker v. Peerless Ins. Co.*, No. 4:13-cv-01809-BHH, 2017 WL 839532, at *6 (D.S.C. Mar. 3, 2017) ("Here, at the dismissal stage, the Court draws no conclusions as to the reasonableness of Defendant's conduct as alleged by Plaintiff. While the application of *Tyger River* to these facts is not entirely clear, . . . [s]uch a dispute is better addressed at the summary judgment stage."). Significantly, "if no reasonable jury could find for [Plaintiff] on the evidence" presented in a summary judgment motion, then the Court would grant summary judgment. *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cty.*, 819 F.3d 69, 74 (4th Cir. 2016); *see Helena Chem. Co. v. Allianz Underwriters Ins. Co.*, 594 S.E.2d 455, 462 (S.C. 2004) ("[I]f there is a reasonable ground for contesting a claim, there is no bad faith."); *see, e.g.*, *McCray v. Allstate Ins. Co.*, No. 3:14-cv-02623-TLW, 2017 WL 6731594 (D.S.C. Oct. 11, 2017) (granting summary judgment for the insurer because its conduct "was reasonable as a matter of law"); *Temple v. Mut. of Omaha Ins. Co.*, No. 4:11-cv-00128-RBH, 2013 WL 314750 (D.S.C. Jan. 28, 2013) (same). As indicated below, the Court will be entering an amended scheduling order that will extend the time for filing dispositive motions (including motions for summary judgment).

On a related note, the Court cautions the parties that the five-million dollar verdict amount likely cannot be considered in determining whether Defendant's actions were unreasonable. *See Howard v. State Farm Mut. Auto. Ins. Co.*, 450 S.E.2d 582, 584 (S.C. 1994) ("Evidence that arises after the denial of the claim is not relevant to the

However, the Court concludes the amended complaint fails to state plausible claims for **negligence/gross negligence** and **negligence per se**. As for negligence/gross negligence, the crux of this cause of action is that Defendant was negligent in processing, handling, and adjusting Plaintiff's claim against Poston and that Defendant's conduct was a "breach of the covenant of good faith and fair dealing." *See* Am. Compl. at ¶¶ 47–53. The negligence/gross negligence claim is duplicative of the bad faith claim, and as other judges in this District have recognized, a freestanding claim of negligence is improper in these specific circumstances. *See Maranto v. State Farm*, No. 2:98-cv-03131-PMD, ECF No. 19 at pp. 3–4 (filed Aug. 11, 1999) (citing *Nichols*[11] and explaining that while an insurer's negligence can be considered in a bad faith claim, "no authority support[s] the existence of a separate, free-standing claim of negligence in such circumstances" (ellipsis omitted)); *Kraemer v. Massachusetts Mut. Life Ins. Co.*, No.2:15-cv-04571-CWH, 2017 WL 5635469, at *6 (D.S.C. Apr. 28, 2017) ("Based on the South Carolina elements of bad faith and *Maranto*, it appears that [the plaintiff]'s negligence claim is better suited as a bad faith claim." (internal footnote omitted)), *aff'd*, 701 F. App'x 268 (4th Cir. 2017). The negligence per se claim contains similar allegations and likewise fails. Additionally, the negligence per se claim is premised on S.C. Code Ann. § 38–47–10,[12] but this statute does not appear to create a private cause of action and Plaintiff has not provided any authority recognizing such. *See generally Doe v. Marion*, 645 S.E.2d 245, 248 (S.C. 2007) ("When a statute does not specifically

---

propriety of the conduct of the insurer at the time of its refusal."); *see Jordan v. Allstate*, No. 4:14-cv-03007-RBH, 2016 WL 4367080, at *7 (D.S.C. Aug. 16, 2016) ("Under *Howard*, . . . South Carolina law appears to prohibit consideration of the judgment/verdict . . . in the underlying case as irrelevant. That is because evidence of the verdict amount was obviously not available to Allstate at the time it denied Plaintiff's demand for the entire amount of [insurance] coverage."), *aff'd*, 678 F. App'x 171 (4th Cir. 2017).

[11] In *Nichols*, the South Carolina Supreme Court explained: "Under our view of the bad faith cause of action, . . . the jury is entitled to consider negligence on the issue of unreasonable refusal to pay benefits." 306 S.E.2d at 620.

[12] Section 38–47–10 addresses licensing requirements for insurance adjusters.

create a private cause of action, one can be implied only if the legislation was enacted for the special benefit of a private party."). Thus, the Court will dismiss the negligence/gross negligence and negligence per se claims.

## Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss [ECF No. 16]. Plaintiff's only remaining claims are breach of contract and bad faith. The Court **DIRECTS** the parties to submit a proposed consent amended scheduling order (including an extension for the filing of dispositive motions) **no later than March 4, 2019,** for the Court's consideration.

**IT IS SO ORDERED.**

Florence, South Carolina  s/ R. Bryan Harwell
February 26, 2019  R. Bryan Harwell
 United States District Judge